[Civil No. 3222. Filed January 30, 1933.]

[18 Pac. (2d) 653.]

WESTERN UNION TELEGRAPH COMPANY, a Corporation, Appellant, v. GERTRUDE GRIFFIN and O. H. GRIFFIN, Her Husband, Appellees.

388

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld and Mr. Francis R. Stark, for Appellant.

Mr. L. C. McNabb and Mr. O. B. De Camp, for Appellees.

ROSS, C. J.—This is an action by Gertrude Griffin, in which her husband O. H. Griffin joins, brought against the Western Union Telegraph Company to recover damages she alleges she sustained by reason

of the failure of the defendant to correctly transmit and deliver to her a telegram.

On August 31, 1930, the plaintiff caused the county superintendent of schools of Bates county, at Butler, Missouri, where she lived, to wire the state superintendent of public instruction of Arizona at Phoenix asking if "30 college hours and grade in Arizona History and Physics" would qualify applicant for Arizona certificate for rural school. Upon receipt of this message, one of the operators of the defendant telephoned it to a clerk or employee in the office of the superintendent of public instruction, who dictated over the telephone to defendant's operator the answer: "Not eligible for certificate under terms of your wire." The telegram received by the county superintendent of schools of Bates county on September 1, 1930, read: "Eligible for certificate under terms of your wire." When this telegram was received by the sendee and shown to plaintiff, the latter, who had been corresponding with the officers of the grammar school at Quartzsite, Yuma county, Arizona, concerning a teaching position, immediately prepared to go to Yuma county. Her husband, who was an employee in a seedhouse, resigned his position. She and her husband, who were engaged in the dairy business, sold it and, relying upon the telegram loaded themselves and three children into their automobile and left for Yuma county; and by driving five days and two nights, almost continuously, arrived at their destination on September 13th, in time for the plaintiff to take the examination before the county superintendent of schools for a teacher's certificate. She failed of the necessary grades to entitle her to a certificate to teach in the schools of Arizona. She seeks to recover her expenses and damages for the inconvenience she was caused by defendant's error.

The defendant in its answer, besides a general denial, sets forth that the message was an interstate message and delivered to and accepted by it subject to its schedules of tariffs, rates and classifications, and the conditions and stipulations as set forth in its standard message contract filed by the defendant with, and approved by, the Interstate Commerce Commission July 13, 1921. Defendant alleges that a condition of said contract is:

"6. The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

That plaintiff did not present to defendant in writing, or at all, within sixty days after said message was filed with it for transmission, any claim or demand for damages. That the message was unrepeated and, according to a condition of said contract, the company is not liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any message paid for at an unrepeated rate, beyond the sum of $500.

The court rejected these special defenses and submitted the case to the jury on the question of damages, and the jury found the issue in favor of plaintiff and gave her a verdict for $1,000, upon which a judgment was entered.

The defendant has appealed and assigned many errors, but we have come to the conclusion that the case should have been disposed of on defendant's special defenses, and will confine ourselves to the consideration of the question or questions these defenses raise. These questions were properly raised by motion for a directed verdict and by requested instructions.

By the amendment of June 18, 1910 (36 Stat. 539), U. S. C. A., title 49, §§ 1–15, the Interstate Commerce

Act was extended to cover common carriers engaged in the transmission of intelligence by wire or wireless in interstate and foreign commerce. Before this, the regulation of such agencies was generally recognized as a state right or function, and their liability for tort or breach of contractual duty was governed by statute and by the common law, or both. The regulation of interstate commerce is by the Federal Constitution conferred upon the Congress. Article 1, § 8, subd. 3. Until the Congress assumed the exercise of this power by the creation of the Interstate Commerce Commission and invested it with the supervision and regulation of common carriers of intelligence, such as telegraph and telephone and cable companies, there was no objection to the different states occupying such field. Congress having moved into the field, however, has automatically ousted the states. It is now well settled by the federal courts and most of the state courts that the rights and liabilities and duties arising out of interstate messages depend upon the act of Congress. The latest opinion of the Supreme Court upon the effect and exclusiveness of the act of Congress and the powers of the Interstate Commerce Commission thereunder, in regard to the duties and liabilities of telegraph companies in transmitting interstate messages, is found in *Western Union Tel. Co.* v. *Priester,* 276 U. S. 252, 48 Sup. Ct. 234, 72 L. Ed. 555, wherein the court said:

"Since the decision in the Primrose Case [154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883] the telegraph companies have been brought under the provisions of the Interstate Commerce Act and their tariffs for all interstate service made subject to the approval of the Interstate Commerce Commission. Interstate Commerce Act, § 1, as amended by Act of June 18, 1910, c. 309, § 7, 36 Stat. 539 [U. S. C. title 49, sec. 1] (49 U. S. C. A. § 1). By section 1 of the Interstate Commerce Act it is provided that subject to the approval

of the Commission messages received by telegraph companies for transmission may be classified into 'repeated, unrepeated . . . and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages.' The established rates for unrepeated messages thus became the lawful rates and the attendant limitation of liability became the lawful condition upon which messages might be sent. [Citing cases.] What had previously been a matter of common-law liability, with such contractual restrictions as the states might permit, then became the subject of federal legislation to secure reasonable and just rates for all without undue preference or advantage to any. Since that end is attainable only by adherence to the approved rate, based upon an authorized classification, that rate 'represents the whole duty and the whole liability of the company.' *Western Union Teleg. Co.* v. *Esteve Bros. & Co., supra* [256 U. S. 566, 41 Sup. Ct. 584, 65 L. Ed. 1094]."

The plaintiff contends that since the message was telephoned to defendant, and not written upon one of defendant's blank forms for telegrams, the sender thereof did not assent to the condition that written claim for damages should be made within sixty days from the filing of the message with it, as would have been the case had she used such blank form and signed the message. It does not seem that this difference affects or changes the duties or liabilities of the parties to such contract, or those for whose benefit it was entered into, for the reason that the tariffs, rates, classifications, conditions and stipulations filed with the Interstate Commerce Commission by defendant can only be changed or modified with the consent and approval of such body. In *Western Tel. Co.* v. *Esteve Brothers & Co.,* 256 U. S. 566, 41 Sup. Ct. 584, 65 L. Ed. 1094, the plaintiffs in sending the message did not use a blank containing the provisions limiting liability, nor did they have actual knowledge

of the resolution of the company, nor of the filing of the tariffs with the Interstate Commerce Commission. The court, speaking through Mr. Justice BRANDEIS, said:

"The question presented for our decision is whether, since the amendment of June 18, 1910, to the Act to Regulate Commerce, the sender is, without assent in fact, bound as matter of law by the provision limiting liability, because it is a part of the lawfully established rate. . . .

"The lawful rate having been established, the company was by the provisions of section 3 of the Act to Regulate Commerce [49 U. S. C. A., § 3] prohibited from granting to any one an undue preference or advantage over the public generally. . . . The 'act of 1910 was designed to and did subject such companies as to their interstate business, to the rule of equality and uniformity of rates.' . . .

"Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not, as before, a matter of contract, by which a legal liability could be modified, but as a matter of law by which a uniform liability was imposed. Assent to the terms of the rate was rendered immaterial, because when the rate is used, dissent is without effect. . . . The limitation of liability attached to the unrepeated . . . rate is binding upon all who send messages to or from . . . [sister states] until it is set aside as unreasonable by the Commission. . . .

"The rule does not rest upon the fiction of constructive notice. It flows from the requirement of equality and uniformity of rates laid down in section 3 of the Act to Regulate Commerce. Since any deviation from the lawful rate would involve either an undue preference or an unjust discrimination, a rate lawfully established must apply equally to all, whether there is knowledge of it or not."

In *Wolynski* v. *Western Union Tel. Co.*, 118 Misc. 115, 192 N. Y. Supp. 583, the message was telephoned

to the defendant, and it was contended by the plaintiff "that the schedules of rates embodying the limited liability of defendant for damages occasioned in the handling of an unrepeated message have no application to the message in question for the reason that the sender had no notice thereof; that the defendant having accepted such message over a telephone and undertaken its transmission and delivery without any notice to the sender or the plaintiff of any condition limiting its liability, plaintiff's damages are to be solely measured by the common law."

The court rejected this contention on the authority of the Esteve Brothers case, *supra,* with this comment:

"It thus appears that the Supreme Court has decided that upon all interstate business the liability of the defendant for errors in transmissions or delays in delivering an unrepeated message is limited to the damages specified in the schedule of tariffs filed with the Interstate Commerce Commission; that a contract cannot be made increasing that liability; that the failure to make a contract cannot create a liability to be measured by the common law."

The schedule regulation requiring the presentation in writing of claims for damages within sixty days we think is reasonable and valid. The right of a common carrier to require one to present his claim within a reasonable time after its accrual or forfeit his right to sue thereon was recognized at common law. *Gardner* v. *Western Union Tel. Co.,* (C. C. A.) 231 Fed. 405 (*certiorari* denied 243 U. S. 645, 37 Sup. Ct. 405, 61 L. Ed. 944). In that case the identical question, that is, the validity of the sixty-day clause, was before the court. It was there said:

"Whether the regulation is a reasonable one or not is in our judgment a question for the Interstate Commerce Commission to determine."

This conclusion was arrived at from the fact that Congress, having taken complete possession of the field of interstate commerce by telegraph, the states could not legislate with reference thereto or exercise any regulatory powers over it. In other words, the jurisdiction of Congress was exclusive. The sixty-day limit within which to present claims for damages has nothing to do with the statute of limitations, as suggested by plaintiff. The right to sue is qualified thereby, but if the claim is presented within the sixty days the claimant may sue at any time before the action is barred by the statute.

Our conclusion is that Congress having assumed the constitutional duty and power to regulate interstate commerce by telegraph, and having authorized those engaged in the transmission of intelligence in that way to make and formulate schedules of tariffs, rates, and classifications, and the terms and conditions upon which such business is to be transacted, subject to the approval of the Interstate Commerce Commission, that such tariffs, rates, classifications, terms and conditions are exclusive, and that one conceiving himself damaged by the wrongful act of the telegraph company in transmitting interstate messages must conform to such rules and regulations. This the plaintiff failed to do.

The court should have sustained the defendant's first special defense.

We have frequently recognized the binding effect upon this court of the decisions of the Supreme Court of the United States, where federal questions were involved. *State* v. *Jay J. Garfield Building Co.*, 39 Ariz. 45, 3 Pac. (2d) 983; *Bardon* v. *Hubbs*, 30 Ariz. 307, 246 Pac. 770; *Morris* v. *Western Union Tel. Co.*, 24 Ariz. 12, 206 Pac. 580.

This disposition of the case renders it unnecessary to consider other assignments.

The judgment of the lower court is reversed and the cause remanded, with directions that the complaint be dismissed.

LOCKWOOD and McALISTER, JJ., concur.