James **LUNDGREN** d/b/a **Pacific Con-struction Company, Plaintiff,**

v.

**The WESTERN UNION TELEGRAPH COMPANY, Defendant.**

**Civ. No. 7538.**

United States District Court
D. Oregon.

May 27, 1955.

Seymour L. Coblens, Portland, Or., for plaintiff.

Edgar Freed, Portland, Or., for defendant.

SOLOMON, District Judge.

Plaintiff filed an action for damages against Western Union, claiming that by reason of the latter's negligent failure to deliver a telegram by a particular time he has suffered damages in the sum of $16,423.58. The defendant denies any negligence or breach of a specific agreement to deliver this message. As a special defense, the defendant alleges that under the terms of defendant's standard message contract, printed on the back of all telegraph form blanks and filed with the Federal Communications Commission as part of its approved tariff regulations, the limits of liability for unrepeated messages is $500; and for repeated messages $5,000 unless specially valued.

By the pretrial order it was agreed that the message alleged by plaintiff to have been delayed in delivery was telephoned to the defendant and was not sent on a telegraph blank containing this as well as other standard provisions. Plaintiff concedes that if the message had been sent on a blank of Western Union, he would be precluded from recovery except on the basis set forth in such printed provisions. The question now before the court is whether plaintiff, who telephoned his message to Western Union for transmittal and who had no knowledge of such limitations, is bound by the limitations of legally approved rate provisions.

It has been long settled that senders of a message are bound as a matter of law by the tariff limitations of liability without regard to their knowledge of or assent to these limitations. Western Union Telegraph Company v. Esteve Bros. & Co., 1921, 256 U.S. 566, 41 S.Ct. 584, 586, 65 L.Ed. 1094. In explaining the rationale of this decision, Mr. Justice Brandeis stated:

"The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the service rendered.

"The act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the principles previously governing them. Before the act the

companies had a common law liability from which they might or might not extricate themselves according to views of policy prevailing in the several states. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed. Assent to the terms of the rate was rendered immaterial, because when the rate is used, dissent is without effect."

Plaintiff contends, however, that the situation is different in cases in which the message was telephoned to the telegraph company for transmittal. Plaintiff admits that he has made a diligent search of all authorities and was unable to find even one decision which approved of such a distinction. Plaintiff also admits there are state court decisions which have specifically rejected such contentions. Grand Rapids Show Case Co. v. Postal Telegraph Cable Co., 1921, 215 Mich. 30, 183 N.W. 731 and Western Union Telegraph Co. v. Griffin, 1933, 41 Ariz. 387, 18 P.2d 653.

However, plaintiff still insists that the distinction is a proper one and affords an adequate basis upon which to predicate unlimited liability.

An examination of the opinion of Mr. Justice Brandeis in the Esteve case, as well as the opinions of the state courts that have passed upon this specific point, convinces me that there is no legal basis for drawing a distinction between a message delivered to a telegraph company over the telephone and one delivered on a blank furnished by the telegraph company.

 I am therefore of the opinion that plaintiff is bound by the tariff provisions filed with and approved by the Federal Communications Commission.

On the other issue submitted to me, I find that whether the message was sent as a "repeated" or a "non-repeated" one is a question of fact.