**ROBERT GIBB & SONS, INC., a North Dakota Corporation, Plaintiff,**

v.

**WESTERN UNION TELEGRAPH COMPANY, a New York Corporation, Defendant.**

No. A2–76–37.

United States District Court, D. North Dakota, Southeastern Division.

March 8, 1977.

Thomas C. Wold, Pancratz, Wold & Johnson, P. C., Fargo, N. D., for plaintiff.

E. T. Conmy, Jr., Conmy, Feste & Bossart, Ltd., Fargo, N. D., for defendant.

## MEMORANDUM OF DECISION
## AND ORDER

BENSON, Chief Judge.

Robert Gibb and Sons, Inc., a North Dakota corporation, Plaintiff, initiated this action alleging it sustained damages of loss of profits in the amount of $115,000 caused by the delay in transmitting two telegrams over Defendant's facilities from Fargo, North Dakota to Bismarck, North Dakota, concerning bids on the plumbing, heating and ventilation of a building at the State Capitol. Jurisdiction was alleged to exist under 28 U.S.C. § 1332 based on diversity of citizenship between the parties and an amount in controversy exceeding $10,000. Thereafter, Defendant moved to dismiss on the ground that, to a legal certainty, the requisite jurisdictional minimum of $10,000 was absent.

■ Defendant contends that jurisdictional amount in controversy is absent because a tariff filed with the North Dakota Public Service Commission (PSC) limits liability on messages of this type to $500 for each telegram, for a total of $1,000 in this case.[1]

Plaintiff contends the jurisdictional minimum exists because: (1) NDCC § 8–10–04 controls in this case and that section allows Plaintiff to recover the full amount alleged in the complaint; and (2) the tariff schedule limiting liability to $500 for each telegram is invalid for failure to comply with

[1.] The complaint alleges damages of $115,000, which is normally a sufficient allegation to confer jurisdiction in federal district court under 28 U.S.C. § 1332. However, if it appears to a legal certainty the Plaintiff is entitled to recover a maximum of less than the jurisdictional minimum, dismissal for lack of subject matter jurisdiction would be appropriate. *Starks v. Louisville & Nashville Railroad Company*, 468 F.2d 896 (5th Cir. 1972); *Cannon v. United Insurance Co. of America*, 352 F.Supp. 1212 (D.S.C.1973).

the statutory requirements for enacting tariff schedules.

The parties agree that the messages sent are properly designated "unrepeated." The parties have submitted the Tariff Regulations filed by Defendant with the Public Service Commission, approved by it and which were in effect at all relevant times material to this case, and which provide in part:

## "I. CONDITIONS

The following are the classifications and conditions under which messages will be accepted for transmission:

To guard against mistake or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and the Telegraph Company as follows:

1. The Telegraph Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the unrepeated-message rate beyond the sum of five hundred dollars; nor for mistake or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated-message rate beyond the sum of five thousand dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines.

2. In any event the Telegraph Company shall not be liable for damages for mistakes or delays in the transmission or delivery, or for the non-delivery, of any message, whether caused by the negligence of its servants or otherwise, beyond the actual loss, not exceeding in any event the sum of five thousand dollars, at which amount the sender of each message represents that the message is valued, unless a greater value is stated in writing by the sender thereof at the time the message is tendered for transmission, and unless the repeated-message rate is paid or agreed to be paid and an additional charge equal to one-tenth of one per cent of the amount by which such valuation shall exceed five thousand dollars.

3. The Telegraph Company is hereby made the agent of the sender, without liability, to forward this message over the lines of any other company when necessary to reach its destination."

The parties have stipulated that the transmissions in this case were intrastate in nature thus requiring the court to look to tariff schedules on file and approved by the North Dakota PSC and state law for determination of the issues in this case, rather than the federal law. *See* 47 U.S.C. § 153(e)(3).

■ Defendant is willing to assume that the tariff in question was adopted by the PSC without prior public notice or hearings and without submitting to the PSC the information listed in NDCC § 49–05–04. Defendant contends, however, that prior notice or hearings and submitting information as required by § 49–05–04 were not required.

Defendant initially filed tariffs with the PSC pursuant to NDCC § 49–21–04.

NDCC § 49–21–04 provides:
"The commission shall require each telephone company, within such time as it shall fix and in such form and detail as it may require, to file with the commission:
1. Schedules showing all rates and charges which are established and in effect at the time for any service rendered to the public by such telephone company within this state; and
2. All rules and regulations which in any manner affect the rates charged or to be charged for such service,
and such telephone company shall not make any changes thereafter in said schedule, rates, or charges other than

those named in such schedule without first securing the consent of the commission."

Thereafter, changes to the original tariffs are made by the Defendant pursuant to NDCC § 49–05–05, which provides:

"No change shall be made by any public utility in any tariffs, rates, joint rates, fares, tolls, schedules, classifications, or service which have been filed and published by any public utility, except after thirty days' notice to the commission. Such notice shall state plainly the changes proposed. The commission for a good cause shown, may allow changes upon less than the notice herein specified, either in particular instances or by a general order applicable to special or peculiar circumstances or conditions."

Under § 49–05–05, unless the PSC suspends within thirty days a rate change filed with it, the change automatically goes into effect as the established and effective rate "subject to the power of the commission, after a hearing had on its own motion or upon complaint, to alter or modify the same." Prior notice, other than as was given in this case, prior hearings and the submission of information under § 49–05–04 were not required in this case and are therefore not applicable. Based on the foregoing, the court concludes Plaintiff's contention that the tariff is invalid for failure to comply with statutory requirements is without merit.

Plaintiff also contends this court properly has jurisdiction under 28 U.S.C. § 1332 because the tariff limiting liability is contrary to NDCC § 8–10–04. The latter section provides:

"Every person whose message is refused, postponed, or delayed contrary to the provisions of sections 8–10–02 and 8–10–03 is entitled to recover from the carrier his actual damages and additional damages for mental distress and anguish caused by the refusal, delay or postponement." [2]

There is no factual dispute that the telegrams were delayed. The parties disagree, however, over whether § 8–10–04 controls the damage issue or whether the tariff limits liability to $1,000. This question appears to be a matter of first impression in North Dakota and must be decided according to what this court concludes would be the decision of the Supreme Court of the State of North Dakota or what the law is as declared by its Legislature. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. NDCC § 8–10–02 provides:

*"Order of transmission and delivery of telegraph messages.—*
A carrier of messages by telegraph, if it is practicable, must transmit every such message immediately upon its receipt and must promptly deliver all messages received in any telegraph office within the state if it is in the power of the telegraph company to locate the party to whom the message is addressed. If this is not practicable and several messages accumulate upon his hands, he must transmit and deliver them in the following order:
1. Messages on public business from public agents of the United States or this state;
2. Messages intended in good faith for immediate publication in newspapers, and not for any secret use;
3. Messages giving information relating to the sickness or death of any person; and
4. Other messages, in the order in which they were received."

NDCC § 8–10–03 is not relevant.

Paragraphs VIII and IX of the complaint allege the basis for Defendant's liability. Paragraph VIII alleges:

"It was the duty of the Defendant, Western Union, to transmit the messages with all diligence and without delay or neglect."

Paragraph IX alleges:
"The messages were not transmitted with diligence, but were transmitted through interstate channel first to Minneapolis, Minnesota. They were not received in Minneapolis until 8:00 P.M., December 12, 1975, and were not finally delivered to the Director of Institutions in Bismarck, North Dakota, until 11:00 P.M., December 12, 1975, some 9 hours after the bidding had closed and some 12 hours after received for transmission."

Defendant's duty in every case is prescribed in NDCC § 8–10–02, as set out above. Although the Plaintiff does not specifically allege a violation of Defendant's statutory duty, the parties apparently agree the complaint states a claim upon which relief can be granted and the court will proceed on that basis.

In addition, the plaintiff does not seek damages under § 8–10–04 for mental distress and anguish caused by the delay.

■ The law is settled, with regard to interstate transmission, that tariff provisions limiting liability are binding on all parties and have the force of law irrespective of their knowledge or notice thereof and irrespective of whether the message is filed on a regular blank, on a blank piece of paper, over the telephone, or in some other manner. *Western Union Telegraph Company v. Esteve Bros.*, 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921); *Postal Telegraph Cable Company v. Warren-Godwin Lumber Company*, 251 U.S. 27, 40 S.Ct. 69, 64 L.Ed. 118 (1919); *Komatz Construction, Inc. v. Western Union Telegraph Company*, 290 Minn. 129, 186 N.W.2d 691 (1971); *Dowling v. Western Union Telegraph Company*, 92 F.2d 864 (1st Cir. 1937); *Schaafs v. Western Union Telegraph Company*, 215 F.Supp. 419 (E.D.Wis.1963); *Lundgren v. Western Union Telegraph Company*, 132 F.Supp. 933 (D.Ore.1955). Intrastate transmissions, however, are governed by state laws and regulations if such transmissions are governed by a state regulatory commission. 47 U.S.C. § 153(e)(3).

■ Absent § 8–10–04, it is settled the limitation of liability provision would be the law and "an inherent part of the rate. The [telegraph] company could no more depart from it than it could depart from the amount charged for the service rendered." *Western Union Telegraph Company v. Esteve Bros.*, 256 U.S. 566, 571, 41 S.Ct. 584, 586, 65 L.Ed. 1094 (1921). The court concludes § 8–10–04 does not alter the liability between the parties as it is limited by the tariff.

The rates to be charged by the Defendant are controlled by the Public Service Commission. Any rate considered by the PSC to be unreasonable is unlawful and subject to change. NDCC § 49–04–02. Telegraph companies are entitled to be compensated in accordance to the risk assumed in the performance of its services.

" 'The theory . . . is that a public utility, being strictly regulated in all operations with considerable curtailment of its rights and privileges, shall likewise be regulated and limited as to its liabilities. In consideration of its being peculiarly the subject of state control, "its liability is and should be defined and limited." (citation omitted). There is nothing harsh or inequitable in upholding such a limitation of liability when it is thus considered that the rates as fixed by the commission are established with the rule of limitation in mind. Reasonable rates are in part dependent upon such a rule.' " *Trammell v. Western Union Telegraph Co.*, 57 Cal.App.3d 538, 129 Cal.Rptr. 361, 369 (1976), quoting *Cole v. Pacific Tel. & Tel. Co.*, 112 Cal.App.2d 416, 246 P.2d 686, 688 (1952).

§ 8–10–04 was derived from California Civil Code § 2209.[3] That section of the California Civil Code was still in effect at the time *Trammel v. Western Union Telegraph Co.* was decided. Yet the California Supreme Court held that the tariff filed with the state Public Utilities Commission limited liability in that case to no more than $500 for an unrepeated intrastate message.

The logic for such a decision is sound. NDCC § 8–10–04 together with the tariff filed with and approved by the PSC provide that when an individual is damaged due to a delay in the transmission of his telegram, he is entitled to recover damages from the carrier. However, recovery is limited according to the type of telegram sent, that is, whether it is unrepeated, repeated or specially valued. If the transmission was unrepeated, recovery is limited to $500. Recovery for a repeated message is limited to $5,000 and if the message was specially

---

3. Cal.Civ.Code § 2209 provides:

"DAMAGES WHEN MESSAGE IS REFUSED OR POSTPONED.

Every person whose message is refused or postponed, contrary to the provisions of this Chapter, is entitled to recover from the carrier his actual damages, and fifty dollars in addition thereto."

The same language was used in § 1287 of the North Dakota Civil Code enacted in 1877, which is the original source of NDCC § 8–10–04 as it now appears. *See, Russell v. Western Union Telegraph Company*, 3 Dak. 315, 19 N.W. 408 (1884).

valued, recovery is limited to the value placed on the message by the sender. This increased protection to the sender is paid for by him at increased rates. As long as this tariff remains in effect, it limits the recovery available under § 8–10–04.

It therefore appears to a legal certainty that Plaintiff would not be entitled to any damage recovery over $1,000, which effectively defeats jurisdiction under 28 U.S.C. § 1332.

IT IS ORDERED the Motion of Western Union Telegraph Company to dismiss for lack of subject matter jurisdiction is GRANTED. The action is dismissed without prejudice.