[Criminal No. 761. Filed October 15, 1931.]

[3 Pac. (2d) 983.]

STATE, Appellant, v. JAY J. GARFIELD BUILD-ING COMPANY, a Corporation, Respondent.

46

Mr. K. Berry Peterson, Attorney General, Mr. Charles L. Strouss, Assistant Attorney General, Mr. William G. Hall, County Attorney, and Mr. E. T. Cusick, Special Prosecutor, for the State.

Mr. Ben C. Hill, for Appellee.

ROSS, J.—The defendant was informed against by the county attorney of Pima county for refusing and failing to pay one of its employees the current rate of wage for work on the construction and alteration of a school building for Tuscon school district No. 1 of Pima county. A jury was waived and the case tried before the court upon a statement of facts stipulated by the parties.

The defendant by motion in the nature of a demurrer moved to dismiss the action on the ground that the admitted facts do not constitute a public offense, although they aptly describe all the acts the statute requires to make out the offense. It was contended by the movant that if the statute is enforced it will deprive the defendant, its officers and agents, of their liberty and property without due process of law, in violation of the fourteenth amendment to the Constitution of the United States and section 4 of article 2 of the Constitution of Arizona, for the following reasons:

" . . . That said statutes contain no ascertainable standard of guilt; that it cannot be determined with any degree of certainty what sum constitutes a current wage in any locality; that the term 'locality' is fatally vague and uncertain; that said statutes are not sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties; that the statute forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess its meaning; that the statutes are too indefinite or uncertain to support an information and are void for uncertainty; that under said statutes an ordinary person cannot intelligently choose in advance what course it is lawful for him to pursue; that said statutes admit of such a double or vague meaning that a citizen may act upon one conception of its meaning and the courts upon another; and that what is lawful or unlawful under said statutes is left to conjecture, guess and reasonably different constructions."

This motion was granted on authority of *Connally* v. *General Construction Co.*, 269 U. S. 385, 70 L. Ed. 322, 46 Sup. Ct. Rep. 126, and the state has appealed.

The section of the statute under which the information is drawn reads as follows:

"Eight hours, and no more, shall constitute a lawful day's work for all persons doing manual or mechanical labor employed by or on behalf of the state, or of any of its political subdivisions, except in an extraordinary emergency, in time of war, or for the protection of property or human life; in such cases the persons working to exceed eight hours each day shall be paid on the basis of eight hours constituting a day's work. Not less than the current rate of per diem wages in the locality where the work is performed shall be paid to persons doing manual or mechanical labor so employed by or on behalf of the state or of any of its political subdivisions. Persons doing manual or mechanical labor employed by contractors or sub-contractors in the execution of any contract with the state, or with any of its political subdivisions, shall be deemed to be employed by or in

behalf of the state, or of such subdivision thereof."
Sec. 1350, Rev. Code 1928.

It is the validity of the current wage feature of
the statute that is in question. The right of the state
to limit the hours of labor upon public works for it-
self or its political subdivisions has long been settled
law (*Atkin* v. *Kansas,* 191 U. S. 207, 48 L. Ed. 148,
24 Sup. Ct. Rep. 124), and it seems the prevailing
rule so declared for a like reason is that the state
and its political subdivisions may establish a mini-
mum rate of wages for laborers upon public works.
16 R. C. L. 497, § 68.

It is not, then, a question of the power of the legis-
lature to prescribe a current rate of wages for man-
ual and mechanical labor on public works, but
whether that phrase in its context is sufficiently clear
and definite to inform the employer of the per diem
he should pay to satisfy the law. If the employer,
supposing him to be a person of ordinary intelli-
gence, is not able, as between two or more alternative
wages that are open to him, to determine which
would be a compliance with the statute, it cannot be
said the statute is definite and certain, for in such
case the court might conclude the alternative adopted
by the employer was the wrong one.

The information alleges the criminal act was com-
mitted between June 5th and June 11th, 1931, and
consisted of a refusal to pay one Carl S. Smith, a car-
penter, $9 per day, "the current rate of per diem
wages for mechanical labor in said locality of the
City of Tucson, Arizona," and in paying him $8 per
diem of eight hours. The stipulation as to the wages
paid carpenters during, just before, and just after
the period involved is as follows:

"That during the week ending June 11, 1931, said
defendant company employed in connection with said
work, including the said Carl S. Smith, fifty-seven
carpenters, two of whom were employed and paid at

the hourly rate of $1.12½ or $9.00 for a full day of eight hours; forty-five of whom were employed and paid at the hourly rate of $1.00 or $8.00 for a full day of eight hours; and ten of whom were employed and paid at the hourly rate of 75¢ or $6.00 a day for a full day of eight hours.

"That the following is a list of other contractors employing carpenters in the City of Tucson, Arizona, and in the immediate vicinity thereof, together with the approximate number of men employed by the respective contractors and the days of employment and the rate of per diem wages paid on the basis of a full day of eight hours:

"Dan Brewster, week ending June 6, 1931: One foreman $9.00; one carpenter $8.00; one carpenter's helper, $3.50; week ending June 13, 1931: One foreman $9.00; one carpenter $8.00.

"Orndorf Construction Company, in connection with work on Veteran's Hospital, immediately south of the city limits of the City of Tucson, week ending June 9, 1931: Five carpenters $8.00; two carpenters $7.00; nineteen carpenters $6.00; week ending June 16, 1931: Eight carpenters $8.00; eighteen carpenters $6.00.

"John W. Murphey Building Company, week ending June 6, 1931: One part time carpenter $13.00; one part time carpenter $10.00; three carpenters $8.00; one carpenter's helper $3.50; week ending June 11, 1931: One carpenter $8.00; two carpenters $10.00 and one carpenter's helper $3.50.

"M. L. Tophoy, no carpenters employed during weeks ending June 6 and June 13, 1931. Last carpenters employed in April, 1931, on basis of $8.00 per day for a full day of eight hours for journeymen carpenters, and $9.00 and $10.00 for foremen, depending upon the nature and importance of the work.

"Frank Putter, week ending June 6, 1931: Five carpenters $9.00; week ending June 13, 1931: Four carpenters $9.00.

"H. L. Arnett, week ending June 6, 1931: Four carpenters $8.00; week ending June 13, 1931: Five carpenters $8.00; one apprentice carpenter $6.00; one carpenter's helper $4.00.

"A. D. Edwards, employed no carpenters during first two weeks in June. Finished last work about May 15, 1931. He was paying one carpenter $9.00.

"S. T. Moore, week ending June 6, 1931: One carpenter $9.00; one foreman $10.00; week ending June 13, 1931: One foreman $10.00.

"Herbert F. Brown, week ending June 4, 1931: None. Week ending June 11, 1931: Two foremen, one at $10.00 and one at $11.00. Week ending June 18, 1931: Two foremen $10.00 and one carpenter $8.00.

"Herman Van Loo, no carpenters employed in June; one carpenter's helper employed latter part of May at $5.00.

"A. C. Jacobson & Son, no carpenters employed during June, 1931. For six months prior to May 15, 1931, employed one carpenter at $9.00 and from two to eight carpenters at $8.00.

"That in the City of Tucson and in the immediate vicinity thereof, there is a variety of work performed by persons doing manual and mechanical labor, and that the value of the services performed depends upon the class and kind of labor performed, and the efficiency of the workmen. That said facts apply to carpenters as well as other persons doing mechanical or manual labor. That neither the wages paid nor the work performed are uniform, and that some workmen are much more efficient and capable than others.

"That the rate of per diem wages for carpenters in the City of Tucson as fixed by the local Carpenters' Union is $9.00 per day on the basis of a full day of eight hours. That said Carpenters' Union agreed to and made a special exception in connection with the work being performed in connection with said Veteran's Hospital, and fixed the rate for Union men on said job at $8.00 per day on the basis of a full day of eight hours. That said Carpenters' Union is the only known organization which has a fixed wage scale for carpenters in the City of Tucson."

It is contended by defendant-appellee that this case is controlled by the decision of the United States Supreme Court in *Connally* v. *General Construction*

*Co., supra.* That was a case brought to restrain certain county and state officers of the state of Oklahoma from enforcing the current rate of wage statute as a criminal statute. The admitted facts in that case, as to the wages paid by employers to laborers in the vicinity of Cleveland, Oklahoma, near which city the work was done, were that the employers and rates were as follows:

"City, $3.60 and $4; Johnson Refining Company, $3.60 and $4.05; Prairie Oil & Gas, $4; Gypsy Oil Company, $4; Gulf Pipe Line Company, $4; Brickyard, $3 and $4; I. Hanses, $3.60; General Construction Company, $3.20; Moore & Pitts Ice Company, $100 per month; cotton gins, $3.50 and $4; Mr. Pitts, $4; Prairie Pipe Line Company, $4; C. B. McCormack, $3; Harry McCoy, $3. The scale of wages paid by the construction company to its laborers was stated to be as follows: Six men at $3.20 per day, seven men at $3.60, four men at $4.00, two men at $4.40, four men at $4.80, one man at $5.20, and one man at $6.50."

It will be noted that in the Connally case wages varied in the locality from $3 at one extreme to $4.05 at the other, whereas in the present case they varied from the extreme of $6 to $10.

The constitutional grounds of attack in this case are the same as those in the Connally case. The Oklahoma statute involved in that case is, for the purposes of this case, the same as ours. The court, after reviewing the cases involving criminal statutes of vague and uncertain meaning, adopted and approved a statement of the rule as found in *United States* v. *Capital Traction Co.*, 34 App. D. C. 592, 19 Ann. Cas. 68, as follows:

"The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A

criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.''

Of the particular statute in question the court had this to say:

''In the light of these principles and decisions, then, we come to the consideration of the legislation now under review, requiring the contractor, at the risk of incurring severe and cumulative penalties, to pay his employees 'not less than the current rate of per diem wages in the locality where the work is performed.'

''We are of opinion that this provision presents a double uncertainty, fatal to its validity as a criminal statute. In the first place, the words 'current rate of wages' do not denote a specific or definite sum, but minimum, maximum, and intermediate amounts, indeterminately, varying from time to time and dependent upon the class and kind of work done, the efficiency of the workmen, etc., as the bill alleges is the case in respect of the territory surrounding the bridges under construction. The statutory phrase reasonably cannot be confined to any of these amounts, since it imports each and all of them. The 'current rate of wages' is not simple, but progressive —from so much (the minimum) to so much (the maximum), including all between; and to direct the payment of an amount which shall not be less than one of several different amounts, without saying which, is to leave the question of what is meant incapable of any definite answer. See *People ex rel. Rodgers* v. *Colcr,* 166 N. Y. 1, 24, 25, 52 L. R. A. 814, 82 Am. St. Rep. 605, 59 N. E. 716.

''Nor can the question be solved by resort to the established canons of construction that enable a court to look through awkward or clumsy expression, or lan-

guage wanting in precision, to the intent of the Legislature. For the vice of the statute here lies in the impossibility of ascertaining, by any reasonable test, that the Legislature meant one thing rather than another, and in the futility of an attempt to apply a requirement, which assumes the existence of a rate of wages single in amount, to a rate in fact composed of a multitude of gradations. To construe the phrase 'current rate of wages' as meaning either the lowest rate or the highest rate, or any intermediate rate, or, if it were possible to determine the various factors to be considered, an average of all rates, would be as likely to defeat the purpose of the Legislature as to promote it. See *State* v. *Partlow,* 91 N. C. 550, 553, 49 Am. Rep. 652; *Com.* v. *Bank of Pennsylvania,* 3 Watts & S. (Pa.) 173, 177.

"In the second place, additional obscurity is imparted to the statute by the use of the qualifying word 'locality.' Who can say, with any degree of accuracy, what areas constitute the locality where a given piece of work is being done? Two men, moving in any direction from the place of operations, would not be at all likely to agree upon the point where they had passed the boundary which separated the locality of that work from the next locality. It is said that this question is settled for us by the decision of the state Supreme Court on rehearing in *State* v. *Tibbetts,* 21 Okl. Cr. 168, 205 Pac. 776, 779. But all the court did there was to define the word 'locality' as meaning 'place,' 'near the place,' 'vicinity,' or 'neighborhood.' Accepting this as correct, as of course we do, the result is not to remove the obscurity, but rather to offer a choice of uncertainties. The word 'neighborhood' is quite as susceptible of variation as the word 'locality.' Both terms are elastic and, dependent upon circumstances, may be equally satisfied by areas measured by rods or by miles."

Mr. Justice HOLMES and Mr. Justice BRANDEIS, whose tendency is to uphold where possible all social and economic laws having as their object the welfare and protection of labor, concurred in the

result of the opinion on the ground that the plaintiff (employer) was not violating the statute by any criterion available in the vicinity of Cleveland. It was held in that case that the provision of the statute concerning current wages was so uncertain as to deprive the contractor of his property without due process of law.

The decisions of the United States Supreme Court involving the construction of the federal Constitution are binding upon the state courts. If it were an open question, we would not be without authority to adopt the view that the current wage feature of the law is sufficiently definite upon which to base a criminal prosecution for its violation. *Atkin* v. *Kansas, supra; Elkan* v. *Maryland,* 239 U. S. 634, 60 L. Ed. 478, 36 Sup. Ct. Rep. 221, following the Atkin case; *State* v. *Tibbetts,* 21 Okl. Cr. 168, 205 Pac. 776; *Ruark* v. *International Union etc.,* 157 Md. 576, 146 Atl. 797. It may be said that since the Supreme Court has decided the question both ways, we are at liberty to adopt the one appearing the sounder to us. The Atkin case was decided in 1903 and, although the current wage feature of the Kansas statute was involved, there was no discussion of it in the court's opinion. The law was sustained, but there is nothing in the opinion indicating that the question of the vagueness or indefiniteness of the statute was called to the court's attention or argued to it. In the Connally case that was the sole issue and the case went off on that point. Because the latter is the last, as well as the only, direct affirmative expression of the court on the validity of the statute, we feel that we are bound to follow it.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.