397 P.2d 949

**STATE of Arizona, Appellee,**

**v.**

**Charles LOCKS, Appellant.**

No. 1362.

Supreme Court of Arizona.

En Banc.

Dec. 30, 1964.

Sullivan & Glenn, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., and William E. Eubank, Chief Asst. Atty. Gen., for appellee.

**150**

SCRUGGS, Justice.

This is an appeal by the defendant, Charles Locks, from a judgment of conviction on March 6, 1963, of exhibiting and keeping for sale obscene or indecent pictures and writings.

At the time of filing the Information, the statute under which the defendant was charged, A.R.S. 13–532, read as follows:

"A person is guilty of a misdemeanor who: 1. Writes, composes, prints, publishes, sells, distributes, keeps for sale, gives, loans or exhibits an obscene or indecent writing, paper or book to any person, or designs, copies, draws, engraves, paints or otherwise prepares an obscene or indecent picture or print."

A.R.S. 13–532 does not define "obscene or indecent." A definition of these words was supplied by the Legislature in A.R.S. 13–531.01, but that definition was adopted subsequent to the commission of the offense now before us and can have no effect on this case.

The State contends that the defendant was obliged to make a determination of the obscene character of the magazines which were introduced in evidence as the obscene or indecent material exhibited and kept for sale by the defendant.

The defendant contends that at the time of the commission of the acts charged, the law did not state any standard or guide from which he could determine the obscene nature of the material which he is charged with keeping for sale or exhibiting; that he was required to use his own standard in making such determination and to take his chances that his conclusion was in accord with the conclusions of the various executive branches of the government charged with enforcing the obscenity statutes.

■ Heretofore, we have held that scienter is implicit in the statute above quoted. State v. Locks, 91 Ariz. 394, 372 P.2d 724. Accordingly, the defendant cannot be found guilty unless he had knowledge of the obscene or indecent nature of the material which it is contended he was keeping for sale and exhibiting. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205; State v. Jackson, 224 Or. 337, 356 P.2d 495.

■■ The law must be definite and certain so that the same standard of conduct may be applied by all persons affected. The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes, the mandates of which are so uncertain that they will admit to different constructions. The crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pur-

sue. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; State v. Tsutomu Ikeda et al., 61 Ariz. 41, 143 P.2d 880; State v. Menderson, 57 Ariz. 103, 111 P.2d 622; State v. Jay J. Garfield Bldg. Co., 39 Ariz. 45, 3 P.2d 983.

██. Where the keeping for sale and exhibiting of obscene or indecent writings or pictures is the charge before the court, it is incumbent upon the court to determine whether the material is obscene as a matter of law. Unless the material is obscene as a matter of law, the dissemination thereof is protected by the First Amendment to the Constitution of the United States. The legal test for obscenity established by Federal case law is whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793. We specifically say "Federal case law" because the phrase "contemporary community standards" refers to the entire nation and not the geographic boundaries of any state or subdivision thereof. To limit "contemporary community standards" to the standards of an area less than the entire nation would conflict with the First Amendment. Jacobellis v. Ohio, supra.

A review of the case law construing the word "obscene" where no statutory definition is given illustrates that the word "obscene" is a word of varied meaning, varying in definition from case to case. The word "obscene" began to take a fixed legal meaning with the interpretation given in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. This was followed by Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639, holding the publication of photographs of nude male figures designed to appeal to homosexuals not to be so obscene as to lose the protection of the First Amendment. Then, in Grove Press, Inc. v. Gerstein, 378 U.S. 577, 84 S.Ct. 1909, 12 L.Ed.2d 1035 (Fla.App., 156 So.2d 537), the United States Supreme Court held Tropic of Cancer to be within the protection of the First Amendment, and, at the same time, in Tralins v. Gerstein, 378 U.S. 576, 84 S.Ct. 1903, 12 L.Ed.2d 1033 (Fla.App., 151 So.2d 19), held Pleasure Was My Business not to be obscene. Up to this time, there was some confusion as to whether the community standards were local or national. This was put at rest in Jacobellis v. Ohio, supra, which held The Lovers (a moving picture containing an "explicit love scene") not to be obscene.

An extensive collection of the decisions may be found in Zeitlin v. Arnebergh, 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152, and in State v. Jackson, supra. The State of New York has accepted the federal doctrine and, in Larkin v. G. P. Putnam's Sons, 14 N.Y.2d 399, 252 N.Y.S.2d 71, 200

N.E.2d 760, held Memoirs of a Woman of Pleasure (Fanny Hill) not to be obscene. This case also collects the case law on the subject of obscenity.

From what we have said, it is obvious that a layman would have nothing but difficulty and confusion in his mind were he to attempt to work out his own definitions of the words "obscene or indecent" as used in A.R.S. 13–532. Were he to refer to a standard dictionary, he would find many definitions of the words "obscene" or "indecent," none of which would give him the knowledge he would need to determine the legal definition, and, of course, without that knowledge, he could not determine whether he would run contrary to the law were he to conclude that any particular material was not obscene. Indeed, the trial judge in this case had considerable difficulty in defining "obscenity" to the jury. The lengthy and involved definition of obscenity which he gave consisted of all the instructions on the subject requested by both the State and the defendant and closed with the words:

"In this case, ladies and gentlemen of the jury, you and you alone are the exclusive judges of what the common conscience of the community is, and in determining that conscience, you are to consider the community as a whole, young and old, educated and uneducated, the religious and the unreligious, men, women and children."

Since the boundaries of the community were not established by the instruction given, the jury was left to guess the standard which it was to apply. The jury is no more empowered to guess at the meaning of an instruction than it is empowered to guess at the interpretation of a statute. State v. Locks, 94 Ariz. 134, 382 P.2d 241.

In the light of the problem concerning the meaning of the words "obscene and indecent," we hold that the Arizona statute under which the Information in this case was filed is too indefinite and uncertain to permit this conviction to stand. While it is in the province of the court to submit a case to the jury under appropriate definition of the words of the governing statute, it is beyond the court's power to supply definitions necessary to render a deficient statute valid, since such action is legislative and not judicial.

The magazines which were introduced in evidence as obscene or indecent were considered by this court in State v. Locks, 94 Ariz. 134, 382 P.2d 241, wherein we described the material in the following words:

" * * * These magazines principally contain pictures of the female in various states of disarray, some more so than others. In some there are interspersed printed articles, factional and fictional, dealing with sex in heavily disguised language. * * *"

We have again carefully examined the exhibits introduced in evidence. Applying to the exhibits the definition established by federal case law above referred to, and comparing them with the material held not to be obscene in said cases, we hold the same to be neither obscene nor indecent.

We quote from Jacobellis v. Ohio, supra:

"We recognize the legitimate and indeed exigent interest of States and localities throughout the Nation in preventing the dissemination of material deemed harmful to children. But that interest does not justify a total suppression of such material, the effect of which would be to 'reduce the adult population * * * to reading only what is fit for children' Butler v. Michigan, 352 U.S. 380, 383, 77 S.Ct. 524, 526, 1 L.Ed.2d 412. State and local authorities might well consider whether their objectives in this area would be better served by laws aimed specifically at preventing distribution of objectionable material to children, rather than at totally prohibiting its dissemination."

The judgment of the lower court is reversed and the case dismissed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ., concur.