408 P.2d 23

**STATE of Arizona, Plaintiff,**

**v.**

**Jose M. COTÁ, Defendant.**

**No. 1615.**

Supreme Court of Arizona.

En Banc.

Nov. 24, 1965.

Norman E. Green, Pima County Atty., Delane C. Carpenter, Asst. City Prosecutor, City of Tucson, for plaintiff.

O. G. Marquez, Tucson, for defendant.

BERNSTEIN, Justice.

Pursuant to Rule 346, Rules of Criminal Procedure, 17 A.R.S., the Superior Court of

Pima County certified this case to us to determine the constitutionality of Chapter 18, § 23(a) of the Code of the City of Tucson found in the 1965 Tucson City Code under Chapter 11, § 28(1) as follows:

"Chapter 11–28 Indecency, lewdness— Acts prohibited. Every person is guilty of a misdemeanor who:

§ 11–28(1). Aides, offers or agrees to commit or commits any lewd or indecent act. * * *"

The question is whether the quoted ordinance is void because of "indefiniteness or uncertainty".

Defendant was convicted in the Tucson City Court of having committed a lewd and indecent act. The facts are irrelevant to the determination of the question certified to us, but we note that the nature of defendant's act as testified to by the state's witnesses at the city court hearing would constitute a lewd and indecent act under any definition. After appealing to the Superior Court, A.R.S. § 22–425, and before testimony was heard there, counsel moved to dismiss the complaint contending that the ordinance in question was void for vagueness thereby depriving defendant of due process of law. Ariz.Const. Article 2, § 4, A.R.S.; U.S.Const. Amendment 14, § 1.

The motion to dismiss and the certification was provoked by our decision in State v. Locks, 97 Ariz. 148, 397 P.2d 949. Defendant in Locks was charged with violating A.R.S. § 13–532 concerning the exhibition and keeping for sale of obscene or indecent pictures and writings. That section did not define "obscene or indecent" but after the commission of the offense the legislature enacted § 13–531.01 defining those words. We said that the crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pursue. We continued:

"In the light of the problem concerning the meaning of the words 'obscene and indecent,' we hold that the Arizona statute under which the Information in this case was filed is too indefinite and uncertain to permit this conviction to stand." 97 Ariz. at 152, 397 P.2d at 952.

In this case, defendant argues that if the words "obscene and indecent" were void for vagueness in the Locks case the words "lewd and indecent" used in the Tucson ordinance must also be void. We do not agree. In the Locks case, the definition problem of which we were speaking was the meaning of obscene literature as opposed to obscene acts. This is clear from an examination of the decisions we reviewed which construed the word "obscene". 97 Ariz. at 151–152, 397 P.2d 949. The definition of obscene literature under federal case law or our statutory enactment is obviously inapplicable to obscene acts. The federal test is whether to the average per-

son, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. 97 Ariz. at 151, 397 P.2d 949. The Arizona statute specifically defines "obscene" to mean that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest or a shameful or morbid interest in nudity, sex or lewdness going substantially beyond customary limits of candor in description or representation of such matters. Section 13–531.01, par. 2. These definitions are not intended to apply to lewd or obscene acts.

■ The law will require greater specificity of criminal statutes which restrict the exercise of particular constitutional rights. In the Locks case we cited Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840, where the United States Supreme Court said it would go far to uphold state statutes that deal with offenses, difficult to define, *when they are not entwined with limitations on free expression*. 333 U.S. at 517, 68 S.Ct. 665. In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, it was said that freedom of speech and press are fundamental freedoms. It is therefore vital that standards for judging obscene literature safeguard the protection of these freedoms. The court's prefatory remark was:

"* * * The door barring federal and state intrusion into this area (free speech and press) cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests." 354 U.S. 488, 77 S.Ct. 1311; see also Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031.

We conclude from an analysis of these decisions that statutes which purport to penalize utterances, printed or spoken, should be distinguished from all other statutes because a challenge of their validity is invariably based also upon the constitutional guarantees of free speech and press. NOTE, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.R. 67, 75; Anno.: Indefiniteness of Penal Laws, 96 L.Ed. 374, 381 supplemented 97 L.Ed. 203; Anno.: Criminal Statutes—Vagueness, 83 L.Ed. 893, 897–898. We have recognized the unique problem of the conflict between police power and the first amendment rights of free speech and press. Elfbrandt v. Russell, 94 Ariz. 1, 381 P.2d 554, judgment vacated on other grounds 378 U.S. 127, 84 S.Ct. 1658, 12 L.Ed.2d 744, reinstated 97 Ariz. 140, 397 P.2d 944.

■ From the above discussion it follows that the unconstitutionality of A.R.S. § 13–532, the obscene literature statute, because of the vagueness of "obscene" and "indecent" does not compel us to invalidate all statutes containing those words. There are many other statutory provisions containing the words vulgar, obscene, indecent,

lewd and lascivious.[1] In Lovelace v. Clark, 83 Ariz. 27, 315 P.2d 876, defendant had been convicted of violating A.R.S. § 13–652, the lewd and lascivious act statute. He then sought a writ of habeas corpus which was dismissed. He appealed to this court upon the ground that the statute violated due process of law because it was void for vagueness. We upheld the statute stating that it defined an offense in terms so that men of common intelligence know its meaning. We noted that the predecessor to A.R.S. § 13–652 was upheld in State of Arizona v. Farmer, 61 Ariz. 266, 148 P.2d 1002.

Defendant argues, in effect, that once the words lewd, obscene and indecent are found to be unconstitutionally vague, all statutes containing those words must be struck down. If we were to accept his argument we would have to invalidate all of the above mentioned statutes and overrule the Lovelace case or, conversely, overrule the Locks decision. Such a conclusion is obviously uncalled for.

 The next question is whether the Tucson ordinance is void for vagueness independent of the applicability of our reasoning in the Locks decision. We think not.

A statute denies due process of law if it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. The Constitution only requires that language convey a sufficiently definite warning as to proscribed conduct when measured by common understanding and practices. That there will be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877. Applying these principles, it has been held that the words "indecent and lascivious" are sufficiently definite to charge a crime. People v. Fry, 403 Ill. 574, 87 N.E.2d 780. If not defined in the statute, the words "lewd and lascivious" must be given their ordinary meaning. Slusser v. State, 155 Tex.Cr.R. 160, 232 S.W.2d 727.

 Where a new crime is created by the legislature, its definition must be clear and easily understood by the common man. State of Arizona v. Menderson, 57 Ariz.

1. A.R.S. § 13–492, subsec. B kidnapping for purpose of committing lewd act; A.R.S. § 13–531 indecent exposure, one who lewdly exposes; A.R.S. § 13–533 seizure of obscene or indecent things; A.R.S. § 13–652 lewd or lascivious act upon another; A.R.S. § 25–313, subsec. A exposing wife to lewd company; A.R.S. § 13–992 punishment for vagrancy if prior conviction for lewd and lascivious act or conduct; A.R.S. § 41–1442 person may be excluded from place of public accommodation if of lewd or immoral character; A.R.S. § 13–1271, subsec. A registration by person convicted of lewd and lascivious act.

103, 111 P.2d 622. The reason is that those offenses may be:

"* * * (U)nknown to the common law and which, for that reason, may not be generally understood, and are without a source of generally accepted construction." State v. Evans, 73 Idaho 50, 245 P.2d 788, 791–792.

But lewdness was a crime at common law and the words "lewd and lascivious" are in common use so that a person of ordinary understanding may know what conduct on his part is condemned. State v. Evans, supra. In State v. Arnold, 64 R.I. 355, 12 A.2d 401, it was held that if a "lewd person" was not defined by the statute the common law definition prevailed. In the Winters case, supra, the United States Supreme Court said:

"Acts of gross and open indecency or obscenity, injurious to public morals, are indictable at common law, as violative of the public policy that requires from the offender retribution for acts that flaunt accepted standards of conduct." 333 U.S. at 515, 68 S.Ct. at 670.

The court went on to say that the words obscene, lewd, lascivious, filthy, indecent and disgusting are well understood through long use in the criminal law.

Despite some uncertainty in the words "lewd or indecent" we think the ordinance is valid, for as Mister Justice Holmes said:

"* * * Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so, it is familiar to the criminal law to make him take the risk."

United States v. Wurzbach, 280 U.S. 396, 399, 50 S.Ct. 167, 169, 74 L.Ed. 508.

We hold that the Tucson ordinance is valid. Therefore, the answer to the certified question is no.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concurring.