420 P.2d 26

CITY OF PHOENIX, Appellant-
Cross Appellee,

v.

Paul FINE, dba Downtown Bookstore,
Appellee-Cross Appellant.

No. I CA–CIV 188.

Court of Appeals of Arizona.

Nov. 7, 1966.

Robert J. Backstein, City Atty., by Barry Leverant, Asst. City Atty., for appellant and cross appellee.

Richard J. Hertzberg, Phoenix, for appellee and cross appellant.

DONOFRIO, Judge.

This is an appeal from a judgment of the Superior Court of Maricopa County deciding that under A.R.S. 13–531.01 four magazines were obscene and under A.R.S. 13–535 enjoining the defendant from sale or distribution of them. Four books involved in the trial were not found to be obscene. The plaintiff City appeals the ruling on these books. A cross appeal by the defendant attacks the ruling on the magazines.

Briefly, the facts are: The Assistant City Attorney acting for the plaintiff City went to a bookstore in downtown Phoenix controlled by the defendant to select items for a test case on A.R.S. 13–535 and 13–531.01. In the presence of defendant and his attorney and with their permission, he removed two copies of each of four different books and of four magazines. All of these items were left with defendant's attorney. The Assistant City Attorney except for a cursory examination read none of the material prior to its seizure.

The same day, August 18, 1964, the City filed a complaint alleging all of these items to be obscene in violation of the statutes and prayed that the defendant be permanently enjoined from selling or distributing them. Further, that upon final determination of their obscenity that all copies of such items [1] be surrendered to the Sheriff for destruction in accordance with the law.

Also filed was a petition for a temporary restraining order. This was issued by the Court on the allegations of the petition that the books and magazines were obscene. The court had not seen or read the magazines or books. The hearing was set for ten days later on the order to show cause why the restraining order should not be made permanent. The Complaint, Order to Show Cause, Petition for Temporary Restraining Order and Restraining Order together with a Subpoena Duces Tecum to produce the books and magazines were served on the defendant that same day.

On the return date of the order to show cause, defendant moved to quash and to dismiss the complaint basically on the grounds that the temporary restraining order was an unconstitutional prior restraint of freedom of the press. Both motions were denied. Thereafter, without waiving his objections, the temporary restraining order was continued by stipulation until trial on the merits.

At the trial, the Assistant City Attorney was the only witness. His testimony only concerned the circumstances of selecting and obtaining the books and magazines involved. The defendant was called, but he invoked the Fifth Amendment and refused to testify. The books and magazines were introduced in evidence. Without other testimony or evidence the court was left to read them and determine their obscenity.

The City presents one question on its appeal. Namely, are the four books obscene?

The defendant presents four questions on the cross appeal, to-wit: 1. Whether the signing of an ex parte temporary restraining order without a prior adversary hearing was a violation of the fourteenth amendment of the U. S. Constitution rendering all subsequent proceedings tainted and void; 2. whether the City failed to sustain the burden of proof when it did not introduce any evidence that the publications met the tests of obscenity; 3. whether the statutory definition of "obscene" is unconstitutional since the "average man" test and the "utterly without redeeming social importance" test are not included, whether the statute requires proof of both customary limits of candor and appeal to prurient interest,

---

1. Appendix A of complaint lists the items as follows: BOOKS; Headline Harlot, A Ram Book, #102; Bordello Queen, A Dove Book, #102; The Plaything, by Edouard Philippe; Passion Pen, by Guy Andreya. MAGAZINES; American Nudist, published by the Outdoor American Corporation, 136th issue; Urban Nudist, A Sun Era Magazine; Princess, published by Seven, Seventy One Publications; Black Nylons, Semi-Annual, Volume 2, Issue #2.

and whether "lewd", "lascivious", "filthy", "indecent", "disgusting", and "immoral" are synonymous with obscene or are they unconstitutional extensions of restrictions of free press; and, 4. whether any of the publications are obscene.

The question dispositive of this appeal is whether the procedure followed in obtaining the temporary restraining order was constitutionally deficient. We deal first with this issue. Because of the importance of the other questions raised to this type of case we feel it also necessary to touch upon them.

█ Freedom of speech and press is a fundamental right guaranteed by the First Amendment of the Constitution of the United States and protected by the Fourteenth Amendment from state action without due process of law. Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957); Near v. State of Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The Constitution of Arizona in Article 2 Section 6, A.R.S. also protects the freedom to publish. The Supreme Court of Arizona has recently spoken out strongly in support of another aspect of this freedom of the press. See Phoenix Newspapers, Inc. v. Superior Court, 101 Ariz. 257, 418 P.2d 594 (1966).

██ The States of the Union have a right to protect their citizens from the publication and distribution of obscene writings and pictures, but because of the fundamental nature of the freedom of the press a State has no right to ban non-obscene publications. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). This would be censorship. State v. Cota, 99 Ariz. 233, 408 P.2d 23 (1965).

█ To afford protection from censorship two things must be done. There must be a determination that the publication is obscene and there must be a hearing so the publication may be defended prior to restraint. Kingsley Books, Inc. v. Brown, (supra); Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

Rule 65(d) of the Rules of Civil Procedure, 16 A.R.S. is the authority for the grant of temporary restraining order.

1. No temporary restraining order shall be granted without notice to the adverse party unless it *clearly appears from specific facts* shown by affidavit or by the verified complaint that *immediate and irreparable* injury, loss, or damage will result to the applicant *before notice can be served and a hearing had thereon.* Every temporary restraining order granted without notice * * *

(ii) Shall define the injury, state why it is irreparable and why the order was granted without notice. (Emphasis added)

█ The specific facts must show that there was reason to believe that these eight publications were obscene in fact. The record shows that at the time this order was granted neither the Assistant City Attorney who filed the petition nor the judge who granted it had read the books or magazines to determine the necessity of this extraordinary procedure without notice or hearing. This was an unconstitutional prior restraint of press. In a case with remarkably similar facts, the United States Supreme Court unanimously held that such a violation of the Fourteenth Amendment infected the proceeding and required reversal whether or not the ultimate conclusion of obscenity was correct. It is so here. Marcus v. Search Warrants (supra).

The Supreme Court of Arizona has recently amended Rule 65(d) and we believe the amendment which went into effect November 1, 1966, has rendered moot the question of whether or not the instant rule would be unconstitutional. The new rule contains extensive protections to avoid the pitfalls of granting temporary restraining orders without notice by requiring the applicant's attorney to certify to the court what efforts he had made to give notice or the reasons why notice should not be required.

■ As we view the many decisions, principally those by the United States Supreme Court on the subject of obscenity, we find that the question of what is obscene must be treated by first determining if the item involved is one which can be as a matter of law considered not obscene. If this cannot be determined, then it becomes a question of fact for the trier of fact. In arriving at its decision the court must apply the standard for judging obscenity as set out in Roth v. United States (supra) i. e., whether to the average person applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest, and also the test of "utterly without redeeming social value" which will be hereafter discussed. Ackerman v. United States (CA9). 293 F.2d 449 (1961); State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964); A Book, Etc. v. Attorney General of Commonwealth of Mass., 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1, (1966).

In the instant case there are no findings, but the court having stated that he had reviewed the evidence and not having granted defendant's motion for a directed verdict, we can assume that he determined the question of obscenity as a trier of fact.

■ Defendant argues that the City has failed in meeting its burden of proof by only introducing in evidence the books and magazines without some showing of appeal to prurient interest, excess of candor, and lack of redeeming social value. We agree.

■ ■ Since the procedure set out in A.R.S. 13–535 for regulation of obscenity is injunctive, the trial judge is always going to be the ultimate trier of fact. To present him with the publications alleged to be obscene and no other evidence is to leave him the choice of two impossible alternatives neither of which is consistent with our philosophy of adversary proceedings. He could rely on his own views and experience alone to determine the question. This puts the control of publications in the hands of a single man. His own concepts would control. For instance, his view on what appeals to the prurient, his view of what is the customary candor of the community, and his view of what has social importance would be the basis of the decision because nothing else was presented to him. These views in reality would involve his personal views. Or alternatively, he could read psychology works, literary criticism, social surveys or anything else that seems to him to be relevant and then based on his interpretation of these, decide. This would be a sort of hidden judicial notice of his resources. The adversaries would have no chance to challenge these "experts" or to present contrary views. The Supreme Court of Arizona has forbidden this kind of taking of judicial notice even when done openly. Utah Const. Co. v. Berg, 68 Ariz. 285, 205 P.2d 367 (1949). The Court must be presented with some evidence on each element to aid it in this determination of fact.

As an example, in briefs and in argument both plaintiff and defendant agreed that one book had some artistic merit and that its author had some standing. But no evidence on this point was presented for the record. Two magazines appear to represent a sincere philosophy of an organized group. No evidence was presented for the record that they did not have some social value or that the appeal was to the prurient or whether or not the group was legitimate.

■ The court may, as any trier of fact, ultimately accept or reject any of the evidence presented to it, but it must have the benefit of evidence. The plaintiff did not meet the burden of showing obscenity as a matter of fact.

■ The next contention is that the statutory definition of "obscene" is unconstitutional.

A.R.S. § 13–531.01, subsec. 2

"Obscene" means that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest or a shameful or morbid interest in nudity, sex or lewdness going substantially beyond customary limits

of candor in description or representation of such matters.

We have the duty to sustain the policy of this state as expressed in its statutes whenever by reasonable interpretation that can be done. A.R.S. 1–211, subsec. B.

The defendant maintains that two tests required by the U. S. Supreme Court are not included in our statutory definition of "obscene". He then contends that the holding of State v. Locks (supra) forbids any court from adding to a statutory definition to make it constitutional. The two tests are:

(1) Is the appeal to the prurient interest of the "*average* man" and

(2) Is the material "utterly without redeeming social importance" ?

We feel that neither test is a part of the definition of the word "obscene" itself.

■ As to the average man test, we think Mr. Justice Brennan for a 6–3 Majority in Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966) has foreclosed that contention with the following language.

"Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement of the Roth test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group. The reference to the 'average' or 'normal' person in Roth, 354 U.S., at 489–490, 77 S.Ct. at 1311, does not foreclose this holding. In regard to the prurient-appeal requirement, the concept of the 'average' or 'normal' person was employed in Roth to serve the essentially negative purpose of expressing our rejection of that aspect of the Hicklin test, Regina v. Hicklin, [1868] L.R. 3 Q.B. 360, that made the impact on the most susceptible person determinative. We adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of sexual interests of its intended and probable recipient group; * * *"

■ ■ We think the "social importance" or "social value" test does not tell us what is obscene. A publication may be obscene and still have "social value". This test tells us that social importance redeems materials that are obscene. The constitutional protections are available to protect obscene materials which have any redeeming social importance. This test does not change the statutory definition, it is only a limitation on the kind of publications to which the definition may be applied. A.R.S. 13–531.01 defines what is obscene. The Federal cases on obscenity tell us that under the U. S. Constitution our definition may not be applied to publications which have redeeming social importance.

■ Defendant claims that the use of "or" between "appeal to prurient" and "customary limits of candor" would allow a finding of obscene by showing one without showing both. We disagree. The use of the "or" is conjunctive between "appeal to prurient interest" and "shameful or morbid interest in nudity, sex, or lewdness". The second phrase in effect states the prurient interest test in a second way. The Model Penal Code treats it in this way. Justice Brennan in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) the case which lays down the basic definition of obscenity says the following in footnote 20:

"* * * We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, § 207.10(2) (Tent Draft No. 6, 1957), viz:

'* * * A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of

candor in description or representation of such matters \* \* \*' "

 A.R.S. 13–531.01, subsec. 2 uses "or" instead of "i. e.", but to the same effect. "Going substantially beyond customary limits of candor" applies to everything that precedes that phrase in the section and is not an alternative standard.

 We think "lewd", "lascivious", "filthy", "indecent", "disgusting", and "immoral" ars synonymous with obscene and do not extend the type of material which may be enjoined under A.R.S. 13–535. State v. Cota, 99 Ariz. 233, 408 P.2d 23 (1965); United States v. Klaw, 350 F.2d 155 (1965), Black's Law Dictionary 4th Ed. at 757, 909, 1024, 1052.

 The defendant fails to show either A.R.S. 13–531.01, subsec. 2 or 13–535 to be unconstitutional.

  This brings us to the final question. Are any of these publications obscene? The purpose of an appellate court is to review rulings on matters of law. When the issues of fact are properly presented to it, the Court may rule on whether as a matter of law there is any evidence to support the conclusion of the trier of fact. Spain v. Griffith, 42 Ariz. 304, 25 P.2d 551 (1933). Our statements in relation to the question of burden of proof must make it clear that we believe no evidence was presented at trial for any finding of fact to be made.

Quoting Mr. Chief Justice Warren of the U. S. Supreme Court in dissent in Jacobellis v. State of Ohio, 378 U.S. 184, 202, 84 S.Ct. 1676, 1685, 12 L.Ed.2d 793, 806 (1964):

"As a result, courts are often presented with procedurally bad cases and, in dealing with them, appear to be acquiescing in the dissemination of obscenity. But if the cases were well prepared and were conducted with the appropriate concern for constitutional safeguards, courts would not hesitate to enforce the laws against obscenity. Thus, enforcement agencies must realize there is no royal road to enforcement; hard and conscientious work is required."

Reversed and case dismissed.

CAMERON, A. C. J., and IRWIN CANTOR, Judge of Superior Court, concur.

NOTE: Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge IRWIN CANTOR was called to sit in his stead and participate in the determination of this decision.