462 P.2d 845

Jimmy BARBONE, Dolores C. Pitts and
Art Urias, Petitioners,

v.

SUPERIOR COURT OF PIMA COUNTY;
and William J. Schafer, III, County Attor-
ney for Pima County; and the State of
Arizona, Respondents.

No. 2 CA–CIV 782.

Court of Appeals of Arizona.
Division 2.
Dec. 19, 1969.

Joseph H. Soble, Peter M. Rubi, Tucson,
and Richard J. Hertzberg, Phoenix, for
petitioners.

Rose Silver, Pima County Atty., William
J. Schafer, III, former County Atty., by
Howard A. Kashman, Deputy County
Atty., Tucson, for respondents.

HOWARD, Judge.

The petitioners, defendants in criminal
proceedings presently pending in Pima
county superior court, have asked this
court to issue a writ of prohibition, di-
rected to the respondent court, to halt the
respective criminal prosecutions.

■ The petitioners were charged with
violations of our obscenity statute, A.R.S.
§ 13–532, as amended, and subsequently
filed motions to quash challenging the con-
stitutionality of the statute. The mo-
tions were denied and these extra-ordinary
writ proceedings were commenced, an ap-
propriate vehicle for testing the consti-
tutionality issue. Loftus v. Russell, 69
Ariz. 245, 212 P.2d 91 (1949); Canon v.
Justice Court for Lake Valley Judicial
District of El Dorado County, 61 Cal.2d
446, 39 Cal.Rptr. 228, 393 P.2d 428 (1964).

A.R.S. § 13–532, as amended, provides:
"A person is guilty of a misdemeanor
who, knowingly:

1. Prints, copies, manufactures, pre-
pares, produces, or reproduces any *ob-
scene* item for purposes of sale or com-
mercial distribution.

2. Publishes, sells, rents, lends, trans-
ports in intrastate commerce, or com-

mercially distributes or exhibits any *obscene* item, or offers to do any such things.

3. Has in his possession with intent to sell, rent, lend, transport, or commercially distribute any *obscene* item." (Emphasis added.)

The term "obscene" is defined in A.R.S. § 13–531.01:

"In this article, unless the context otherwise requires:

\*   \*   \*   \*   \*   \*

2. 'Obscene' means that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest or a shameful or morbid interest in nudity, sex or lewdness going substantially beyond customary limits of candor in description or representation of such matters."

■ The petitioners' claim of unconstitutionality is directed to the sufficiency of the statutory definition of "obscene." Since the definition, they argue, does not include the "average man" test and the "utterly without redeeming social importance" test, as articulated in recent U. S. Supreme Court decisions, it suffers a constitutional infirmity. These same contentions were advanced in the case of City of Phoenix v. Fine, 4 Ariz.App. 303, 420 P.2d 26 (1966), and our Phoenix counterpart found no constitutional defect in the statutory definition of obscene, holding that neither test is a part of the definition of the word itself. Although under certain circumstances we would not consider ourselves bound by a prior decision of Division One of this court, Streenz v. Streenz, 11 Ariz.App. 10, 461 P.2d 186 (filed November 18, 1969), we find ourselves in accord with the *City of Phoenix* holding.

The petitioners argue, however, that the *City of Phoenix* decision is not in accord with the principles enunciated by our Arizona Supreme Court in State v. Locks, 97 Ariz. 148, 397 P.2d 949 (1964), wherein the court struck down, on the grounds of vagueness, the predecessor counterpart of

A.R.S. § 13–532. (No legislative definition of "obscene" was set forth.) The court therein stated:

"The law must be definite and certain so that the same standard of conduct may be applied by all persons affected. The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes, the mandates of which are so uncertain that they will admit to different constructions. The crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose in advance what course it is lawful for him to pursue." (Citations omitted.) 97 Ariz. at 150, 397 P.2d at 951.

And:

"From what we have said, it is obvious that a layman would have nothing but difficulty and confusion in his mind were he to attempt to work out his own definitions of the words 'obscene or indecent' as used in A.R.S. § 13–532. Were he to refer to a standard dictionary, he would find many definitions of the words 'obscene' or 'indecent,' none of which would give him the knowledge he would need to determine the legal definition, and, of course, without that knowledge, he could not determine whether he would run contrary to the law were he to conclude that any particular material was not obscene. \* \* \*

\*   \*   \*   \*   \*   \*

In the light of the problem concerning the meaning of the words 'obscene and indecent,' we hold that the Arizona statute under which the Information in this case was filed is too indefinite and uncertain to permit this conviction to stand. While it is in the province of the court to submit a case to the jury under appropriate definition of the words of the governing statute, it is beyond the court's power to supply definitions necessary to render a deficient statute valid, since such action is legislative and not

judicial." 97 Ariz. at 152, 397 P.2d at 952.

\* \* \* \* \* \*

■ While the judiciary is duty bound to construe a statute so as to sustain its constitutionality, Shenfield v. City Court, 8 Ariz.App. 81, 443 P.2d 443 (1968); State v. Scofield, 7 Ariz.App. 307, 438 P.2d 776 (1968); Arizona Corporation Commission v. Continental Security Guards, 103 Ariz. 410, 443 P.2d 406 (1968), penal statutes which restrict the exercise of particular constitutional rights are subject to closer scrutiny as to the requisite specificity. State v. Cota, 99 Ariz. 233, 408 P.2d 23 (1965). Courts, however, require only that a statute give *fair* warning of the proscribed conduct, i. e., the language does not have to achieve that degree of exactness which inheres in a mathematical theorem, but is sufficient if it informs a person of ordinary or average intelligence of the prohibited conduct. State v. Horn, 4 Ariz.App. 541, 422 P.2d 172 (1966); Brockmueller v. State, 86 Ariz. 82, 340 P.2d 992 (1959), cert. den., 361 U.S. 913, 80 S.Ct. 258, 4 L.Ed.2d 184.

The problem of defining obscenity has been discussed in numerous articles and books. See, e. g., R. Fox, The Concept of Obscenity (1967); Ernst & Schwartz, Censorship: The Search for the Obscene (1964); "Obscenity: An Analysis and Statutory Proposal," Wis.L.Rev. 421 (1969); "Candor or Shame? Defining Obscenity by Statute," 38 Okl.B.A.J. 1333 (1967); M. Paulsen, The Problem of Drafting an Obscenity Statute (1961). The Oklahoma Bar Journal article points out the varying techniques of defining obscenity in the various states: (1) No definition; (2) Use of multiple synonyms; (3) As a tendency to corrupt youth; (4) As a tendency to corrupt public morals; and (5) Including Arizona, defining it in terms of the *Roth* rule. (Roth v. U. S., infra)

One law review article points out that the task of giving content to the term "obscene" has fallen largely to the courts:

"The statutory law of obscene literature is peculiar. Though obscenity is one of the most elusive and difficult concepts known to the law, legislative bodies have seldom made any effort to provide a workable definition of the term. Instead, the typical statute or ordinance begins with the word 'obscene' and continues with a string of synonyms selected haphazardly from the following list: disgusting, filthy, immoral, improper, impure, indecent, lascivious, lewd, licentious, suggestive and vulgar. But the additional epithets have made little or no difference in judicial interpretations of the statutes and ordinances; their draftsmen might just as well have contented themselves with the single word 'obscene.'

In consequence, courts confronted with concrete cases for decision are left to work out for themselves their own meaning for obscenity, with little or no guidance from the legislature." Lockhart & McClure, Obscenity in the Courts, 20 Law and Contemporary Problems 587 (1955).

In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the U. S. Supreme Court rejected the prior standard of obscenity which allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons. (Regina v. Hicklin, L.R. 3 Q.B. 360 [1868]). In *Roth*, obscene material was defined as "material which deals with sex in a manner appealing to prurient interest." The court, in a footnote, stated:

"We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, § 207.10(2) (Tent. Draft No. 6, 1957), viz.:

'\* \* \* A thing is obscene if, considered as a whole, its predominant appeal is to prurient interests, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor

in description or representation of such matters. * * * ' " 77 S.Ct. at 1310.

As we read *Roth*, we note that the court distinguishes between the standards for judging obscenity and the definition of obscenity. In rejecting the *Hicklin* standard, the *Roth*-enunciated standard requires that the effect of the *entire* material upon the average person, applying contemporary community standards, be the criterion.

The *Roth* decision has been interpreted as laying down only two constitutional requirements—that the material must be judged as a whole rather than by its part and that it must be judged by its impact on average persons rather than upon the weak and susceptible. Lockhart & McClure, "Censorship of Obscenity: The Developing Constitutional Standard," 45 Minn.L.Rev. 5 (1960).

In 1966, the U. S. Supreme Court decided the trilogy of Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed. 2d 31; Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56; and A Book Named John Cleland's Memoirs of a Woman of Pleasure v. Attorney General of the Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (*Fanny Hill* case).

In *Mishkin*, supra, the court discarded a contention that the term "obscene" in the New York penal statute was impermissibly vague, stating:

"* * * Indeed, the definition of 'obscene' adopted by the New York courts in interpreting § 1141 delimits a narrower class of conduct than that delimited under the *Roth* definition, [citation omitted], and thus § 1141, like the statutues in *Roth,* provides reasonably ascertainable standards of guilt." 86 S.Ct. at 962.

It went on to say:

"* * * The First Amendment prohibits criminal prosecution for the publication and dissemination of allegedly obscene books that do not satisfy the *Roth* definition of obscenity. States are free to adopt other definitions of obscenity only to the extent that those adopted stay within the bounds set by the constitutional criteria of the *Roth* definition * * *." 86 S.Ct. at 963.

In the *Fanny Hill* case, supra, Mr. Justice Brennan, with Justices Warren and Fortas concurring, stated:

"* * * Under this definition [Roth], as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 86 S.Ct. at 977.

It is apparent that our legislature in the wake of the *Locks* decision, supra, defined "obscene" in accordance with the *Roth*-approved definition set forth in the Model Penal Code, Tent. Draft No. 6. We have found no U. S. Supreme Court decision subsequent to *Roth* which has retracted, modified or overruled its approved definition of obscenity.

We are of the opinion that our statutory definition satisfies the requirements of *Locks*, supra, and that reference to the "average man" and "utterly without redeeming social importance" tests are not requisite to a definition of the word "obscene." City of Phoenix v. Fine, supra. Albeit we agree with petitioners that the "average man" test is not abolished by *Mishkin*, supra, we do not agree that it is a requisite part of the definition. The "average man" standard is the U. S. Supreme Court's answer to the question— Who is to decide what is the dominant theme of a particular book or picture or play? See Chief Judge Desmond's concurring opinion in People v. Richmond County News, Inc., 9 N.Y.2d 578, 216 N.Y. S.2d 369, 175 N.E.2d 681 (1961).

As to the "utterly without redeeming social value" test, we agree with the Kentucky Court of Appeals which, when the

same contention was postulated in Cain v. Commonwealth, 437 S.W.2d 769 (Ky. 1969),[1] stated:

" * * * We do not read this requirement in the case for the reason that this again was a no clear majority opinion. The test was joined in by only three justices of the court. Conceding that these three justices interpreted the Memoirs case as making the redeeming social value test a new factor for the determination of obscenity, this test was not approved by the other justices of the court and, therefore, in our opinion it has not become the law on this subject. We have examined the Roth-Albert case, supra, and believe it still to be controlling authority * * *." 437 S.W.2d at 771–772.

See also Fort v. City of Miami, 389 U.S. 918, 88 S.Ct. 231, 19 L.Ed.2d 263 (1967). The U. S. Supreme Court denied a petition for certiorari to review the constitutionality of a Florida obscenity ordinance which did not include "redeeming social value" in its definition of obscenity. Justices Stewart, Black and Douglas[2] however, dissented.

We are cognizant of the recent federal court decision in Stein v. Batchelor, 300 F. Supp. 602 (N.D.Texas 1969), which struck down the Texas obscenity statute as unconstitutional for lack of inclusion of the "redeeming social value" test in its definition. See also dicta in Zeitlin v. Arnebergh, 59 Cal.2d 901, 383 P.2d 152, 31 Cal.Rptr. 800; Phelper v. Decker, 401 F.2d 232 (5th Cir. 1968). We do not, however, agree with its conclusion that the *Roth* progeny have altered the *Roth*-approved definition of obscenity.

In determining the degree of certainty required by due process, courts should take into account the legislature's difficulty in expressing particular concepts. State v. Scofield, supra. As stated in Roth v. United States, supra:

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '* * * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' [citation omitted] These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark ' * * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *.'" 77 S.Ct. at 1312.

We believe, therefore, that our statutory definition of "obscene," applied according to the standards enunciated by the U. S. Supreme Court for judging obscenity, gives adequate warning of the proscribed conduct and affords sufficient guidelines for fair administration of the anti-obscenity statute. Henley v. Wise, 303 F.Supp. 62 (N.D.Ind.1969); See also State v. Locks, 91 Ariz. 394, 372 P.2d 724 (1962).

1. There is presently pending an appeal to the U. S. Supreme Court. 38 L.W. 3095.

2. Justices Black and Douglas have consistently considered all obscene matter to be "constitutionally protected, except where it can be shown to be so brigaded with illegal action that it constitutes a clear and present danger to significant social interests." Magrath, The Ob-

scenity Cases: Grapes of Roth, 1966 S.Ct.Rev. at 56. Justice Stewart favors outlawing only hard-core pornography. Jacobellis v. State of Ohio, 378 U.S. 184, at 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (concurring) and Ginzburg v. United States, 383 U.S. 463, 499–500, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) (dissenting).

Finding no "jurisdictional" impediment to the continuation of these criminal proceedings, the petition for a writ of prohibition is hereby denied.

KRUCKER, C. J., and HATHAWAY, J., concur.