514 P.2d 1234

**STATE of Arizona, Appellee,**

v.

**Rudolph L. PRESLEY, Appellant.**

**No. 2542.**

Supreme Court of Arizona,
En Banc.

Oct. 26, 1973.

Gary K. Nelson, Atty. Gen., by Peter M. Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

H. Stewart Bradshaw, Yuma, for appellant.

HAYS, Chief Justice.

Defendant appeals from a jury verdict of guilty of voluntary manslaughter, for which he received a five-year suspended sentence.

The facts are confused and contradictory. However, taken in a light most favorable to sustaining the verdict, they are as follows: The U. S. Marine base near Yuma, Arizona, runs a shuttle bus between the town and the base. There were both black and white marines stationed at the base and there was considerable friction between the races.

On June 22, 1971, the base bus was picking up marines at various points in and about Yuma. It picked up eight or nine blacks who were rowdy, profane, and generally in a disagreeable mood. At least one of them harassed the driver throughout the trip to the base. The bus picked up a white marine named Dalton, and one of the black passengers promptly greeted him with insulting and profane language as he walked to the rear of the bus and sat down. A little later it picked up another

white marine named Violett who was similarly greeted as he took a seat next to Dalton. Before long a fist fight broke out, involving the two whites and defendant and one or more blacks. Dalton was drunk or at least had been drinking. He opened the safety rear door of the bus, climbed out so that he was standing on the rear bumper and yelled to the driver to stop so that he could get off. The driver, apprehensive of an impending riot, kept the bus going at about 40 miles per hour to get back to the safety of the base as soon as possible. In a matter of seconds, Dalton fell or was pushed off the bumper and landed on the pavement where a car following the bus ran over and killed him. Some of the testimony indicated that the defendant had been hitting and kicking him prior to the opening of the door, told him to jump out or get pushed out, and knocked the victim's hand from the door so that he could no longer hold on and could not avoid falling. The evidence is ample to support the verdict. However, three errors are advanced by the defendant on appeal:

1. Permitting a witness to testify that two days before the fatal ride, defendant was pleasantly greeted in his barracks by Marine David Sid. Defendant asked whether Sid was a "whitey" to which Sid replied, "No, I'm brown." To that answer, defendant replied, "Well, you're lucky you are not a whitey," and upon being asked why he was so angry, defendant indicated that he was tired of the harassment he customarily got on the bus when he rode it to and from town.

The judge allowed this testimony to show defendant's state of mind, making the inference that defendant was angry at whites in general and intended to do something about it. Whether this constituted a veiled threat against a class (whites) at which Dalton was a member, is a very close question, as is also the question of whether such a statement made two days previously is relevant. It is our considered opinion that it was within the court's discretion to admit this testimony. Udall, Arizona Law of Evidence, p. 353; State v. Izzo, 94 Ariz. 226, 383 P.2d 116 (1963). Defendant admits that, on the bus, he swung at Violett because he thought he heard the latter use the term "nigger," and when Dalton came to Violett's aid, a fight ensued. We have read the entire 500-page transcript and it is quite obvious that defendant was spoiling for a fight. His attitude towards whites, as indicated two days earlier, was material and not too remote in time to be shown. Defendant also complains that all of the remarks yelled by the other black passengers should have been kept out of the record, but they tend to show that the other passengers were on defendant's side, and help account for the fact that defendant would fight Dalton, despite the fact that the latter was much taller and heavier. We can find no abuse of discretion in the admission of the testimony.

2. Defendant's second claim of error is that after a long day of trial, and considerable deliberation by the jury, the foreman came into court with the jury and, in the presence of the defendant and both attorneys, asked for enlightenment on the difference between second degree murder and voluntary manslaughter. The judge proceeded to re-read the part of his instructions pertaining to that subject.

Defendant claims that this was error, and that the complete instructions should have been re-read, or at least the judge should have informed the jury that they should consider what he had re-read, in connection with all of the other instructions. The State claims that the error was waived by defense counsel's failure to object. He counters with two reasons why an objection was impractical: (1) the damage had already been done and could not be undone, and (2) the jury was tired and would have held it against his client if he had demanded that the judge read the entire instructions over again.

It is true that it is generally the custom throughout the state for judges to re-read the entire instructions when asked

for an explanation of only one phase of them. Defendant, however, cites no authority for his position that a failure to re-read all of the instructions is fundamental error. While we believe that the better practice is to re-read all of the instructions in such cases, we find no prejudicial error here. The foreman asked for elucidation on the difference between second degree murder and voluntary manslaughter, thus indicating that there might be a guilty verdict as to one of those two crimes. In that case, the explanation of the difference between the two crimes undoubtedly had no effect upon the possibility that the jury was going to find him guilty of involuntary manslaughter or find him innocent of any crime. They actually found him guilty of the lesser of the two crimes about which they inquired.

3. Rule 27, Arizona Rules of Criminal Procedure, 17 A.R.S., was invoked by defendant at the start of the trial. All witnesses present were sworn and admonished to remain out of the courtroom, refrain from discussing any of the facts of the case among themselves or with anyone else except the attorneys. The county attorney was present and aware of the court's order. Despite this fact, on the second day he got two prosecution witnesses into his office and went over their testimony in the presence of each other. This borders on a breach of legal ethics and approaches a contempt of the court which made the order. It makes no difference that the order did not specifically exclude the attorneys talking to more than one witness at a time. The purpose of the order was to prevent one witness from learning what another would say, so that he could consciously or unconsciously tailor his own story to conform to the other. That should be plain to any lawyer, whether defense or prosecution, and it should not be necessary for the judge to include every contingency in his directions on the rule, before conduct such as this becomes wrongful. Since, however, the granting of the sequestration of witnesses is a matter within the discretion of the trial court [State v. Romero, 85 Ariz. 263, 336 P.2d 366 (1959)], and the judge could have refused the invocation of the rule, a fortiori he could excuse a partial violation of it, especially where, as here, the county attorney avowed that he had not coached the witnesses or attempted to use the occasion to reconcile any conflicts.

Judgment affirmed.

STRUCKMEYER, LOCKWOOD, and HOLOHAN, JJ., concur.

Note: Vice Chief Justice CAMERON did not participate in the determination of this matter.