566 P.2d 1050

**STATE of Arizona, Appellee,**

v.

**Richard J. NAVARRETTE, Appellant.**

**No. 1 CA–CR 1978.**

Court of Appeals of Arizona,
Division 1,
Department A.

July 6, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div. and Galen H. Wilke, Asst. Attys. Gen., Phoenix, for appellee.

Charles R. Brooks, Phoenix, for appellant.

HAIRE, Judge.

The appellant, Richard J. Navarrette, was found guilty following a jury trial on four counts of commercially exhibiting obscene items in violation of A.R.S. § 13–532 A 2. Since appellant had previously been convicted of the same offense, he was subject to the increased felony penalties set forth in A.R.S. § 13–532 C. Appellant appeals from the convictions and the sentences thereon.

The items in question are four films, bearing the titles "Love Riders"; "Flossie —A Venus of 15"; "John Holmes—Playboy"; and "Travelin". These films were exhibited on June 26, 1975, at four locations in the City of Phoenix, being respectively the Pornorama, Rear Door, Viva and Nu-Vue Theaters. Additional facts will be set forth in our discussion of appellant's vari-ous contentions, which we will consider in appropriate order.

## CONSTITUTIONALITY

◼ Appellant first contends that the obscenity law is void for vagueness because A.R.S. § 13–531.01, the definitional section, does not further define the word "contemporary" in the following definition of an obscene item:

"2. An item is obscene within the meaning of this article when:

(a) The average person, applying contemporary state standards would find that the item, taken as a whole, appeals to the prurient interest; and

(b) The item depicts or describes, in a patently offensive way, sexual activity as that term is described herein; and

(c) The item taken as a whole, lacks serious literary, artistic, political or scientific value."

We have difficulty in perceiving appellant's specific contention in regard to vagueness. Appellant states that standards "can change on a daily basis" and seems to suggest that the statute may be susceptible of a construction which would make standards existing at the time of trial relevant rather than standards existing at the time of the alleged offense.

There is no occasion for us to debate what is or is not a realistic concept of duration of standards in this sphere. Needless to say, the items must have been offensive at the time the offense is alleged to have occurred, and if a pertinent request were made, a jury could not properly be instructed otherwise. The language of the statute cannot be tortured into a construction which would arguably provide to the contrary.

A.R.S. § 13–531.01, as amended in 1974, is obviously drawn with an eye toward *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Miller gave approval to the concept of contemporary community standards. The prior A.R.S. § 13–531.01 had been upheld against an attack for un-

certainty in *NGC Theatre Corp. v. Mummert*, 107 Ariz. 484, 489 P.2d 823 (1971). *See also, Barbone v. Superior Court*, 11 Ariz.App. 152, 462 P.2d 845 (1969) and *City of Phoenix v. Fine*, 4 Ariz.App. 303, 420 P.2d 26 (1966); and *cf. State v. Locks*, 97 Ariz. 148, 397 P.2d 949 (1964). Appellant has not seriously challenged the statute on the grounds of vagueness here and we find *Miller* and *Mummert* controlling on the issue.

■ Appellant has also presented a question contending that the statute is unconstitutional in that it imposes a "prior censorship" in violation of first amendment rights. Appellant has not presented any significant argument, supported by authorities, setting forth his position on this question, and we therefore deem it abandoned. *EFC Development Corp. v. F. F. Baugh Plumbing & Heating, Inc.*, 24 Ariz.App. 566, 540 P.2d 185 (1975). This Court has previously sustained A.R.S. § 13–532 against a contention that it imposed self-censorship and prior restraints on first amendment rights. *State v. Yabe*, 114 Ariz. 89, 559 P.2d 209 (1977).

## OBSCENITY OF FILMS

■ Appellant contends that the films were not obscene as a matter of law. The jury viewed the films, and this Court has viewed the films. All four of the films depict a multiplicity of various actual or simulated ultimate sexual acts. There are in one or all of the films actual or simulated fellatio and cunnilingus as well as sexual intercourse. There are external ejaculations, simulated forcible rape and apparent injuries to sexual anatomy accompanied by simulated bleeding. The sharp focus is upon sexual activity and each of the films depicts hard-core pornography within the meaning of that term as used in *Miller v. California, supra,* and other United States Supreme Court cases. The jury could have

found that such depictions are patently offensive and that each of the films, taken as a whole, appeals to the prurient interest and lacks serious literary, artistic, political or scientific value.

■ Appellant called as a witness a psychiatrist who testified that in his opinion the films had a medical therapeutic value for some persons. The state presented an expert witness who testified that the films were obscene.[1] Considering the overall character of each of the films and particularly the soporifically monotonous concentration on sexual activity, the jury was not bound to accept the conclusion of appellant's expert witnesses that the films had serious scientific value.

## SUFFICIENCY OF THE EVIDENCE

■ Appellant contends that the state did not show by sufficient evidence that he was the exhibitor of the films.

The evidence presented in this regard showed that in the latter part of 1974 and in January of 1975, appellant applied for city amusement licenses to operate each of the four theaters. On each occasion appellant made an affidavit stating that "he is the sole owner" of each of the theater businesses. The licenses granted in respect to these applications were in effect on June 26, 1975. Business privilege tax licenses were also in appellant's name, as was telephone service for all four theaters. The owners of the buildings where the Pornorama and Nu-Vue theaters were located testified that appellant was the lessee. Employees of the Nu-Vue and Viva theaters testified that appellant was their "boss" in June, 1975. Appellant placed radio advertising for the theaters and was seen carrying reels of film into theaters during the first six months of 1975.

The evidence was sufficient to show that appellant exhibited the films.

---

1. While expert testimony on the issue of obscenity is not necessary, it may be considered by the jury. *See, Hamling v. United States*, 418 U.S. 87, 108–110, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Kaplan v. California*, 413 U.S. 115, 120–22, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); *United States v. Cutting, et al.*, 9 Cir., 538 F.2d 835, 838 (1976), cert. denied —— U.S. ——, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977).

■ Appellant also contends that there was insufficient evidence to show scienter or knowledge on his part that the films were obscene.

The word "knowingly" as used in A.R.S. § 13–532 A is defined in subparagraph 4 of § 13–531.01 as follows:

" 'Knowingly' means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of:

(a) The character and content of any material described in this article, which is reasonably susceptible of examination by the defendant. * * * "

This definition appears to be in basic accord with principles adopted by the United States Supreme Court in *Rosen v. United States*, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896), and adhered to in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

It is clear from the evidence here that appellant was running a significant enterprise or group of enterprises involving four theaters, one named the "Pornorama". The businesses were regularly advertised as exhibiting adult or "triple-X rated" films. There was evidence that appellant delivered reels of film to the theaters. This was sufficient to show that appellant had knowledge of the nature and character of the films. *United States v. American Theater Corp.*, 8 Cir., 526 F.2d 48, 50 (1975) (appeal pending).

## VIOLATION OF RULE 9.3(a)

Prior to commencement of trial, at the request of appellant, witnesses were excluded from the courtroom pursuant to Rule 9.3(a) of the Rules of Criminal Procedure, 17 A.R.S., and instructed not to communicate with each other until the end of the trial. During the trial, Officers Thorp and Forster, witnesses for the state, were observed conversing. Officer Forster had already completed giving his principal testimony and Officer Thorp had given testimony on direct examination. Officer Forster had been given permission to remain with counsel in the courtroom.

Appellant moved to have the testimony of the officers stricken, for a directed verdict of acquittal and for a mistrial. After a hearing at which testimony was taken and argument on the motions the trial judge indicated that he could not find prejudice to appellant and denied the motions.

■ Sequestration of witnesses was formerly discretionary with the court. *See State v. Presley*, 110 Ariz. 46, 514 P.2d 1234 (1973). It is not discretionary under Rule 9.3(a) when it is requested by one of the parties. Nevertheless, a determination as to what sanctions, if any, are necessary remains a matter for discretionary determination by the trial court.

■ Given the nature of the case and in further view of the nature of the matters developed at the hearing on appellant's motions, the credibility of Officers Thorp and Forster could not have been significant outcome determinants in this trial. For that reason, denial of appellant's motions was not an abuse of discretion.

## RECESS FOR EXPERT WITNESS

■ During direct examination of the state's expert witness it became apparent that he was giving testimony based upon a composite of his own reconstructed notes on the films and police departmental reports. He indicated that his own original notes had been destroyed in a fire. The trial court granted a request by the prosecution for a recess so that the witness could organize his thoughts. Appellant claims error.

The jury viewed the films and the testimony of this witness was legally superfluous. See footnote 1, *supra*. This is an area where the trial court has broad discretion and under the circumstances of this case we cannot say that the granting of a recess to enable the witness to testify more expeditiously was an abuse.

## SENTENCE

There was a lengthy presentence hearing pursuant to Rule 26.7(a) of the Rules of Criminal Procedure. The evidence indi-

cated that appellant was without the means to pay any substantial fine. In the course of sentencing the trial judge stated, *inter alia*, that assessment of a fine would be "an exercise in futility" and that "I am not inclined to exercise the discretion of this Court in favor of making an order for you to pay a fine." The trial court thereafter sentenced appellant to four concurrent prison terms of two-to-three years. The trial judge emphasized in the course of pronouncing sentence that he felt that imprisonment was appropriate in view of appellant's adherence to unlawful conduct notwithstanding his recent prior conviction on two counts charging the same offense.

Appellant argues that he was discriminated against and imprisoned because of his poverty. Neither *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), cited by appellant, nor *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), prohibit discretionary selection between imposition of a fine and incarceration, so long as the latter is not extended beyond prescribed limits. The trial judge here merely observed that a fine would be an ineffective form of punishment. A convicted person is not entitled to be free of punishment merely because he is unable to pay a fine; such would be "inverse discrimination". *Williams v. Illinois, supra*, 399 U.S. at 244, 90 S.Ct. 2018. The sentences here are within statutory limits and well within the discretion of the Court.

The judgments and sentences appealed from are accordingly affirmed.

DONOFRIO and JACOBSON, JJ., concurring.