787 P.2d 1111

**The STATE of Arizona, Appellee,**

v.

**Shih Ching LIN, Appellant.**

**No. CA–CR 8266.**

Court of Appeals of Arizona, Division 1.

July 16, 1985.

Review Granted Sept. 17, 1985.

curred, but no processing took place and the commission did not send a claim form to the claimant.

**316**

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser, and Gerald R. Grant, Phoenix, for appellee.

Richard J. Hertzberg, Phoenix, for appellant.

LACAGNINA, Judge.

In this case Lin was convicted of one count of exhibition of an obscene item, a class 6 felony, in violation of A.R.S. § 13–3502. The court denied motions by Lin for acquittal and new trial. Lin owns and operates a motel in Phoenix, where on July 6, 1983, two police officers rented a room and watched a film on the television set. The officers procured a search warrant and seized the film which was introduced into evidence at the trial to prove Lin's violation of § 13–3502.

On appeal, Lin claims the trial court and prosecutor committed numerous errors which we need not address because the determination of one issue raised by Lin will result in his acquittal. He argues he was entitled to a judgment of acquittal because the state offered no evidence for the jury's consideration on state standards, prurient appeal, lack of value, or any other element of the crime of obscenity, and rested its case solely on the introduction into evidence of the seized movie. We agree and reverse the conviction and sentence.

■ In order to convict one charged with violation of § 13–3502, the trier of fact must find under subparagraph (2) that the item (a movie entitled "Campus Capers") was obscene within the meaning of Chapter 35 when the average person, *applying contemporary state standards,* would find the item taken as a whole appeals to prurient interests and depicts or describes in a patently offensive way, sexual activity as described by the statute, and the item taken as a whole lacks serious literary, artistic, political or scientific value.

The Arizona statute contains the "three-prong test" necessary to pass federal constitutional scrutiny as described by the U.S. Supreme Court in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In *Miller* the Court said:

The basic guidelines for the trier of fact must bar (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin,* supra [408 U.S. 229], at 230 [92 S.Ct. 2245 at 2246], 33 LEd2d 312, quoting *Roth v. United States,* supra, [354 U.S. 476] at 489, [77 S.Ct. 1304 at 1311], 1 LEd2d 1498; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the *'utterly* without redeeming social value' test of *Memoirs v Massachusetts,* 383 US [413], at 419 [86 S.Ct. 975, at 977], 16 LEd2d 1; that concept has never commanded the adherence of more than three Justices at one time. See supra, [413 U.S.] at 21, [86 S.Ct. at 2613] 37 LEd2d at 429. If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. See *Kois v. Wisconsin,* supra, [408 U.S.] at 232 [92 S.Ct. at 2247], 33 LEd2d 312; *Memoirs v. Massachusetts,* supra, [383 U.S.] at 459–460, [86 S.Ct. at 998], 16 LEd2d 1 (Harlan, J., dissenting); *Jacobellis v. Ohio,* 378 US [184], at 204 [84 S.Ct. 1676 at 1686], 12 LEd2d 793 (Harlan, J., dissenting); *New York Times Co. v Sullivan,* 376 US 254, 284–285, 11 LEd2d 686, 84 SCt 716 [728], 95 ALR2d 1412 (1964); *Roth v United States,* supra, [354 U.S.] at 497–498 [77 S.Ct. at 1315–1316], 1 LEd2d 1498 (Harlan, J., concurring and dissenting).
(Emphasis in opinion; footnote omitted). 413 U.S. at 24, 93 S.Ct. at 2614, 37 L.Ed.2d at 431.

The question now is, what proof is required in Arizona to prove beyond a reasonable doubt that an item is obscene? The answer is provided by our own court in *City of Phoenix v. Fine,* 4 Ariz.App. 303, 420 P.2d 26 (1966), where the court said:

Defendant argues that the City has failed in meeting its burden of proof by only introducing in ·evidence the books and magazines without some showing of appeal to prurient interest, excess of candor, and lack of redeeming social value. We agree.

Since the procedure set out in A.R.S. 13–535 [now § 13–3505] for regulation of obscenity is injunctive, the trial judge is always going to be the ultimate trier of fact. To present him with the publications alleged to be obscene and no other evidence is to leave him the choice of two impossible alternatives neither of which is consistent with our philosophy of adversary proceedings. He could rely on his own views and experience alone to determine the question. This puts the control of publications in the hands of a single man. His own concepts would control. For instance, his view on what appeals to the prurient, his view of what is the customary candor of the community, and his view of what has social importance would be the basis of the decision because nothing else was presented to him. These views in reality would involve his personal views. Or alternatively, he could read psychology works, literary criticism, social surveys or anything else that seems to him to be relevant and then based on his interpretation of these, decide. This would be a sort of hidden judicial notice of his resources. The adversaries would have no chance to challenge these 'experts' or to present contrary views. The Supreme Court of Arizona has forbidden this kind of taking of judicial notice even when done openly. *Utah Const. Co. v. Berg,* 68 Ariz. 285, 205 P.2d 367 (1949). The Court must be presented with some evidence on each element to aid it in this determination of fact.

As an example, in briefs and in argument both plaintiff and defendant agreed that one book had some artistic merit and that its author had some standing. But no evidence on this point was presented

for the record. Two magazines appear to represent a sincere philosophy of an organized group. No evidence was presented for the record that they did not have some social value or that the appeal was to the prurient or whether or not the group was legitimate.

The court may, as any trier of fact, ultimately accept or reject any of the evidence presented to it, but it must have the benefit of evidence. The plaintiff did not meet the burden of showing obscenity as a matter of fact.

4 Ariz.App. at 307, 420 P.2d at 30.

The state urges us to adopt the language of *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, and *Kaplan v. California*, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492, insofar as those cases do not require expert affirmative evidence that the items in question are obscene in order to satisfy constitutional requirements. Neither case prohibits the State of Arizona from requiring proof greater than that required by federal courts. We find more persuasive the language in the case of *U.S. v. 2,200 Paperback Books*, 565 F.2d 566 (9th Cir.1977), decided after *Kaplan* and *Paris, supra*. In *2,200 Paperback Books*, the court after acknowledging and quoting from *Miller, Kaplan, Paris*, and other federal cases dealing with the test for obscenity, said:

It seems clear that the government bears the burden of proving obscenity to the satisfaction of the trier of fact. *United States v. Obscene Magazines, Film and Cards*, 541 F.2d 810, 811 (9th Cir.1976). While the Court has stated that 'expert' affirmative evidence is not required when the materials are actually placed in evidence, *Paris Adult Theatre I, supra*, 413 U.S. at 56, 93 S.Ct. 2628, [at 2634] it has also stated the questions of what appeals to the 'prurient interest' and what is 'patently offensive' under Miller's community standards test are 'essentially questions of fact.' But while the materials themselves 'obviously are the best evidence of what they represent,' *id.*, (that is whether they depict or describe sexual conduct and the degree of explicitness, *Miller, supra*, 413 U.S. at

24, 93 S.Ct. 2607, 2634), the materials will not supply any information as to the community standards by which they are to be judged. The answer to that 'question of fact' must come either from the prior knowledge of the trier of fact, *Smith v. United States*, 431 U.S. 291, 302, 97 S.Ct. 1756, [1764] 52 L.Ed.2d 324 (1977), or be supplied by the parties through expert witnesses.[7]

---

[7] While it may be said that the trier of fact will know obscenity when he sees it (to paraphrase Justice Stewart's concurrence in *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), how exactly can an appellate court determine if he has properly identified the relevant community standards? *See* concurrence in part and dissent in part of Justice Stevens in *Marks v. United States*, 430 U.S. 188, 198, 97 S.Ct. 990, [996] 51 L.Ed.2d 260 (1977).

565 F.2d at 570.

■ Since the legislature has provided for the application of a "state standard" rather than a "community standard" by the trier of fact charged with determining whether the item in question is obscene, the state must introduce evidence of that standard. This seems utterly fair since we are not dealing with a local ordinance attempting to govern the exhibition of obscene items, but a state law which should be uniformly applied in all corners of the State of Arizona. Without such evidence, the appellate courts are unable to make an independent review of constitutional claims for protection by the First and Fourteenth amendments.

In *Penthouse Intern., Ltd. v. McAuliffe*, 610 F.2d 1353 (5th Cir.1980), the court said:

The fact finder is limited though in that he clearly does not possess unbridled discretion in determining what is patently offensive sexual conduct or what lacks serious value. The Court in *Miller* noted that First Amendment values applicable to the states are protected by powers vested in the appellate courts to make an independent review of constitutional claims. 413 U.S. at 25, 93 S.Ct. 2607 [at 2615]. In a concurring opinion, Justice Brennan spoke of the extent of

the power of independent review in obscenity cases when he stated:

'After the Court's decision today, there can be no doubt that *Miller* requires appellate courts—including this Court—to review independently the constitutional fact of obscenity. Moreover, the Court's task is not limited to reviewing a jury finding under part (c) of the *Miller* test that "the work, taken as a whole, lack[ed] serious literary, artistic, political, or scientific value." *Miller* also requires independent review of a jury's determination under part (b) of the *Miller* test that "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law." '

*Jenkins v. Georgia,* 418 U.S. 153, 163–64, 94 S.Ct. 2750, 2756, 41 L.Ed.2d 642 (1974) (Brennan, J., concurring) (citation omitted.)

610 F.2d at 1363.

The decision in *Fine, supra,* is consistent with the views stated in the federal cases requiring independent appellate responsibility on review and said:

This brings us to the final question. Are any of these publications obscene? The purpose of an appellate court is to review rulings on matters of law. When the issues of fact are properly presented to it, the Court may rule on whether as a matter of law there is any evidence to support the conclusion of the trier of fact. *Spain v. Griffith,* 42 Ariz. 304, 25 P.2d 551 (1933). Our statements in relation to the question of burden of proof must make it clear that we believe no evidence was presented at trial for any finding of fact to be made.

Quoting Mr. Chief Justice Warren of the U.S. Supreme Court in dissent in *Jacobellis v. State of Ohio,* 378 U.S. 184, 202, 84 S.Ct. 1676, 1685, 12 L.Ed.2d 793, 806 (1964):

'As a result, courts are often presented with procedurally bad cases and, in dealing with them, appear to be acquiescing in the dissemination of obscenity. But if the cases were well

prepared and were conducted with the appropriate concern for constitutional safeguards, courts would not hesitate to enforce the laws against obscenity. Thus, enforcement agencies must realize there is no royal road to enforcement; hard and conscientious work is required.'

4 Ariz.App. at 309, 420 P.2d at 32.

■ The jury in this case, as the judge in *Fine* and *2,200 Paperback Books, supra,* received no evidence of the "state standard" which it could apply to the movie so as to reach a conclusion that it was obscene. The verdict then could only be the result of the application by each juror of his own personal view of the state standard, a result prohibited by *Fine.* Without evidence of the state standards, we are unable to make the independent review required by *Miller, supra,* and to determine whether or not there was sufficient evidence to justify Lin's conviction or that there was an improper infringement of his First Amendment rights.

The judgment of conviction and sentence are reversed and remanded to the trial court for entry of judgment of acquittal.

LIVERMORE, Judge, concurring.

I join Judge Lacagnina's opinion but wish to add additional reasons. Assuming "Campus Capers" could be constitutionally found obscene without evidence of community standards under *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), our statute should be read as requiring more. City of *Phoenix v. Fine,* 4 Ariz.App. 303, 420 P.2d 26 (1966), required such evidence under an earlier statute. When the statute was revised after *Paris Adult Theatre, supra,* the legislature did not provide for conviction on the basis of examining the allegedly obscene articles alone. This to me seems to be an acquiescence in the rule of *Fine* and requires that we apply it.

Even if a trier could rely on the exhibits alone, I do not believe there to be sufficient evidence to convict. "Campus Capers" for 95 percent of its length depicts sexual conduct as defined in A.R.S. § 13–3501(7). Ob-

viously, therefore, it appeals to an interest in sex. Whether such an interest is "morbid," "shameful," or "unhealthy" as required by the word "prurient" in the definition of obscenity, *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), seems to me to require evidence. One cannot characterize an interest as morbid or unhealthy simply because one does not share it. Those terms imply some adverse effect on the life of the viewer apart from the interest. Given the amount of such material currently purveyed, if interest in depictions of explicit sexual activity is unhealthy, our population seems desperately sick. Before reaching that conclusion something more than mere speculation ought to be required.

For the same reasons, evidence that "Campus Capers" was "patently offensive" ought to be required. Offensiveness can only be judged by the level of toleration within a society. That something is widely distributed indicates toleration by a significant segment of society. In the face of this, a trier can find patent offensiveness only by applying a personal standard belied by what in fact appears to be happening in society.

I personally do not like to require testimony of community standards, presumably to be supplied by experts, but the elements of obscenity as defined by our legislature and as mandated by the United States Constitution seem to me to require it.

HATHAWAY, Presiding Judge, dissenting.

The legal issue presented is what manner of proof is required in a criminal prosecution for commercial exhibition of an obscene item to prove that the item is obscene as defined by the Arizona statute, which conforms to the three-part test of *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). I do not believe that *City of Phoenix v. Fine*, 4 Ariz.App. 303, 420 P.2d 26 (1966) is dispositive of this question. And even if *Fine* can be viewed as requiring expert testimony, I dissent from the position giving individuals a greater state right to commercially exhibit

sexually explicit materials than is required under the federal constitution.

*City of Phoenix v. Fine*, supra, involved a prosecution under a different section of the code, A.R.S. § 13–535. An operator of a bookstore in downtown Phoenix was ultimately enjoined from the sale or distribution of four magazines under A.R.S. § 13–535 (now § 13–3505), injunction of obscene materials, and A.R.S. § 13–531.01 (now § 13–3501), the definitional section. Allegedly obscene books and magazines had been seized by an assistant city attorney who read none of the material before its seizure. A TRO was issued on the allegations. Thus, a prior restraint of potentially First Amendment protected materials occurred without an adversary proceeding and, indeed, without a thorough examination of the materials in question. This was disapproved in *Fine*. The court also rejected the evaluation of allegedly obscene materials from the perspective of one person. Much has happened since *Fine* which I believe limits the strictures, there expressed in dicta.' See *State v. Bartanen*, 121 Ariz. 454, 591 P.2d 546, cert. denied, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979); *State v. Navarrette*, 115 Ariz. 574, 566 P.2d 1050 (App.1977).

In the instant case, a motel owner was prosecuted for exhibiting an allegedly obscene film under A.R.S. § 13–3502, a class 6 felony, with the question of obscenity submitted to the jury as an issue of fact. The question of obscenity was submitted to a jury of Arizona citizens, in full conformance with repeated statements by the United States Supreme Court concerning what manner of evidence is required:

> "The adversary system, with lay jurors as the usual ultimate fact-finders [sic] in criminal prosecutions, has historically permitted triers of fact to draw on the standards of their community...." *Miller v. California*, supra [93 S.Ct.] at 2618.

> "Nor was it error to fail to require 'expert' affirmative evidence that the materials were obscene when the materials

themselves were actually placed in evidence (citations omitted). The films, obviously, are the best evidence of what they represent." *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446 (1973). See also, *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590 (1974), and *Kaplan v. California,* 413 U.S. 115, 93 S.Ct. 2680, 2685, 37 L.Ed.2d 492 (1973).

Nor does a jury trial present a case of the sin of legal solipsism, rejected in *Fine,* writ large. The jury of eight in this case was repeatedly counseled by both sides and instructed by the court to evaluate the film in terms of what the average adult in the community would think of it, not how it personally reacted to it. The terms "prurient interest" and "patently offensive" were taken from the Arizona statute based on *Miller v. California,* supra, were defined by the court, and have passed scrutiny by our supreme court. *State v. Bartanen,* supra. The jury was not asked to characterize an interest as morbid or unhealthy simply because they did not share it. They were asked:

> "In deciding what conclusion the average person applying contemporary State standards would reach in these respects, the jury is entitled to draw on it's [sic] own knowledge of the views and senses of the average person in the community from which you came.
>
> In deciding whether the material as a whole appeals to the prurient interest and whether the sexual conduct is portrayed in a patently offensive way, the jury must avoid subjective personal and private views in determining community standards and instead evaluate what judgment would be made by a hypothetical average adult person applying the collective view of the adult community as a whole."

*Fine,* because it involves injunctive measures without the benefit of a fact finder applying an objective, not personal standard, is inapplicable to this case.

Moreover, assuming that *City of Phoenix v. Fine,* supra, applies to prosecutions under A.R.S. § 13–3502, formerly § 13–532, any requirement for expert testimony has been rejected by *State v. Navarrette,* supra, also a Division One case. At issue in *Navarrette* was the obscenity of four films as defined by A.R.S. § 13–531.01, now § 13–3501. Commenting on the presentation by the state of an expert witness, the court noted that expert testimony on the issue of obscenity is not necessary. 115 Ariz. at 577, n. 1, 566 P.2d at 1053, n. 1. *Navarrette* was decided after *Paris Adult Theatre I* and cites specifically to it, thereby undermining the argument that Arizona continues to acquiesce in the purported "rule of *Fine.*"

Disturbing is the alacrity with which the majority leaps to require in Arizona "proof greater than that required by the federal courts," majority opinion at 318, 787 P.2d at 1114, giving a greater right to those who make a profit from the debasement of the human spirit, than is required by our federal constitution after a full review of the issue. See *Hamling v. United States,* supra; *Kaplan v. California,* supra; *Paris Adult Theatre I v. Slaton,* supra. States need not wait for behavioral experts to provide empirical data before imposing controls on commerce in obscene materials. *Kaplan v. California,* supra. This sentiment can apply equally to the state law of evidence and the substantive law of obscenity. State obscenity law involves important state interests. *Brockett v. Spokane Arcades,* Inc., 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). These statutes go to the very quality of life in a particular community. Id.

I fully concur in the view of the Arizona Supreme Court that "the concept of federalism assumes the power, and duty, of independence in interpreting our own organic law." *Pool v. Superior Court,* 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984). Where I part company with the majority is in their decision, without the compulsion of federal law and on the shakiest basis in state decisional law, to reject the verdict of a jury properly instructed to apply an objective

standard and whose determination is easily ratified by viewing this exploitative barrage of explicit anal and oral sex, group orgies and scatology.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).