NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICK POGUE, *Appellant.*

No. 1 CA-CR 20-0346
FILED 7-27-2021

Appeal from the Superior Court in Navajo County
No. S0900CR201800709
The Honorable Dale P. Nielson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

Weagant Law Offices PLC, Florence
By Megan K. Weagant
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge David D. Weinzweig joined.

**B R O W N**, Judge:

¶1        Rick Pogue appeals from his convictions and sentences for multiple counts of sexual conduct with a minor and kidnapping.  Finding no reversible error, we affirm.

## BACKGROUND

¶2        We view the evidence in the light most favorable to sustaining the verdict, resolving all inferences against Pogue.  *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004).

¶3        In September 2017, V.P. reported that her adoptive father, Pogue, sexually abused her for over ten years, starting when she was between six and eight years old.  V.P. disclosed that when Pogue was not away from home working as a truck driver, he would force her to engage in sexual intercourse, oral sexual contact, or digital-genital penetration on an "almost daily" basis.  Pogue abused V.P. in a locked bedroom, pinned her with his body, and told her he would "go away for a long time" if she reported the abuse.  V.P. described several of Pogue's distinct physical characteristics and items he used while engaged in the sexual misconduct.

¶4        When Pogue spoke with detectives, he denied abusing V.P. but admitted he was one of V.P.'s primary caregivers, and he acknowledged using the items V.P. had referred to when she described the abuse.  During the police investigation, detectives learned that Pogue committed similar offenses involving V.P.'s mother, Stephanie.  In 1997, Stephanie reported engaging in sexual conduct with Pogue for seven years, starting when she was about 14 years old.  At the time, Pogue was her uncle through marriage.  In a recorded phone call, Pogue admitted he sexually abused Stephanie.  She later claimed, however, that detectives forced her to assist in the investigation and made errors in the transcription of the phone conversation.  In 1998, Stephanie married Pogue and he adopted V.P. Stephanie gave birth to Pogue's son the following year.

¶5          A jury convicted Pogue of seven counts each of sexual conduct with a minor and kidnapping, finding that all but two of the counts were dangerous crimes against children.  The superior court sentenced Pogue to various sentences, including six consecutive terms of life in prison with the possibility of parole after 35 years.  He timely appealed.

## DISCUSSION

### A.    Voluntariness of Statements

¶6          Pogue argues the superior court erred in failing to rule on the voluntariness of his statements to detectives.  Pogue does not, however, claim his statements to detectives were involuntary and should have been suppressed.  We review the court's ruling, or lack thereof, for an abuse of discretion, *State v. Cota*, 229 Ariz. 136, 144, ¶ 22 (2012), and will not disturb it absent a finding of clear and manifest error, *State v. Blakley*, 204 Ariz. 429, 436, ¶ 26 (2003).

¶7          Less than two weeks before trial, Pogue filed several motions, including a motion to suppress involuntary statements.  Though titled a motion to suppress, it did not allege any constitutional violations or argue detectives obtained statements through coercive methods.  The motion merely asked the court to examine whether Pogue's statements were admissible under applicable law.  At a pretrial hearing on the first day of trial, defense counsel conceded he filed the motion as a procedural precaution.  The court noted the untimeliness of the motion, declined to make a pretrial ruling, and elected to consider the voluntariness of Pogue's statements through the course of trial.  Pogue did not object.

¶8          At trial, both parties elicited testimony related to Pogue's statements to detectives.  In relevant part, the testimony revealed Pogue fully cooperated with the investigation, consented to a noncustodial interview, and denied involvement in the offenses.  Though the court noted it had not formally ruled on the issue of voluntariness mid-way through trial, Pogue did not object to proceeding without a ruling.  In closing argument, defense counsel claimed Pogue's cooperation with detectives demonstrated his innocence.  When Pogue raised the court's failure to rule on the issue of voluntariness in a motion for new trial, the court denied the motion and found the evidence at trial showed his statements were voluntary.

¶9          The parties must raise all known issues by motion no later than 20 days before trial. Ariz. R. Crim. P. ("Rule") 16.1(b).  Any motion not timely raised may be precluded. Rule 16.1(c).  Absent a timely challenge to

the use of a defendant's statements, the court is not required to sua sponte make a voluntariness determination. *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977); *State v. Bush*, 244 Ariz. 575, 588–90, ¶¶ 54–62 (2018); *State v. Smith*, 114 Ariz. 415, 419 (1977). Even if timely raised, we will not find statements involuntary unless there is "both coercive police behavior and a causal relation between the coercive behavior and the defendant's overborne will." *State v. Boggs*, 218 Ariz. 325, 336, ¶ 44 (2008).

¶10     Pogue did not timely raise voluntariness or argue his statements to detectives should be suppressed. In essence, Pogue's motion asked the court to make a sua sponte voluntariness determination. Thus, the court acted within its discretion in declining to rule on the untimely pretrial motion and reviewing the nature of the evidence as trial progressed. Rule 16.1(b), (c); *Bush*, 244 Ariz. at 588–90, ¶¶ 54–62. Though delayed, the court found Pogue's statements were voluntary, and nothing in the record shows the delayed ruling impacted the evidence admitted at trial. In fact, Pogue benefited from the admission of his statements because his cooperation with detectives and denial of any misconduct supported his claimed innocence. Pogue cannot seek to profit from the admission of his statements and then argue the court's failure to rule on his untimely, equivocal challenge to those statements constitutes reversible error. *See State v. Tassler*, 159 Ariz. 183, 185 (App. 1988) ("One may not deliberately inject error in the record and then profit from it on appeal.").

¶11     Even if properly raised, a motion that is not ruled on is deemed denied by operation of law. *See State v. Hill*, 174 Ariz. 313, 323 (1993). Nothing in the record shows the court erred in effectively denying the motion to suppress Pogue's statements. Detectives did not use coercive methods in obtaining Pogue's statements. Because Pogue's statements were voluntary and properly admitted, no error occurred. *See Boggs*, 218 Ariz. at 335, ¶ 44.

### B.     Preclusion of Evidence Under Rape Shield Statute

¶12     Pogue contends the superior court erred by precluding evidence of V.P.'s pregnancies and her alleged sexually transmitted diseases. "The [superior] court has considerable discretion in determining the relevance and admissibility of evidence, and we will not disturb that ruling absent an abuse of discretion." *State v. Rose*, 231 Ariz. 500, 513, ¶ 62 (2013).

¶13     Pogue filed an untimely motion in limine to admit evidence pursuant to A.R.S. § 13–1421, known colloquially as the rape shield statute.

Pogue sought to admit evidence of the following: (1) V.P. had two children and once indicated Pogue may be the father; (2) testing excluded Pogue as the father of the children; (3) V.P. received treatment for unspecified sexually transmitted diseases; and (4) Pogue never received such treatment. Pogue argued these instances occurred at the time of the offenses. Pogue did not include any supporting documents with his motion; instead, he requested the court allow him to lay foundation through a detective in a brief pretrial hearing. After the hearing, the court denied the motion, finding Pogue failed to demonstrate that specific instances of pregnancy or disease could be used to undermine the State's evidence, and the rape shield statute barred admission.

¶14 At trial, V.P. testified she gave birth to her son during the time of the offenses and told detectives she did not know if Pogue was the father. She said that testing later excluded Pogue as the father. V.P. also explained that Pogue removed his penis before ejaculating and helped her obtain contraceptives around the age of 16. In Pogue's case-in-chief, Stephanie testified that when V.P.'s "kids were born, [V.P.] told [them] there were ten different people that could have been the fathers" and V.P. "never told the truth about anything." Stephanie said V.P. saw an obstetrician at the age of 13 or 14 and there were no signs of sexual activity at that time. V.P.'s brother testified that V.P. had a reputation for untruthfulness. In denying Pogue's motion for new trial, the court repeated its finding that the precluded instances fell within the protections of the rape shield statute.

¶15 Evidence of "specific instances of the victim's prior sexual conduct may be admitted only if" a court finds (1) the evidence is relevant and "material to a fact in issue," and (2) "the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence." A.R.S. § 13-1421(A). Such evidence may be admitted for limited purposes, including to show "the source or origin of semen, pregnancy, disease or trauma." A.R.S. § 13-1421(A)(2). And before their admission, the alleged instances must be proven by clear and convincing evidence. A.R.S. § 13-1421(B). The purpose of A.R.S. § 13-1421 is to protect victims "from being exposed at trial to harassing or irrelevant questions concerning any past sexual behavior." *State v. Gilfillan*, 196 Ariz. 396, 400–01, ¶ 15 (App. 2000), *abrogated on other grounds by State v. Carson*, 243 Ariz. 463, 465–66, ¶ 10 (2018).

¶16 Pogue has not shown the evidence was material to the facts at issue here. In proving the offenses, the State did not present evidence that Pogue was the source of physical or biological signs of sexual activity. The evidence indicated Pogue used tactics to avoid pregnancy and V.P. showed

no overt signs of sexual activity years into the abuse. Moreover, Pogue has not established that evidence of V.P.'s alleged treatment for diseases could be used to prove that his lack of treatment undermined the State's allegations.

¶17 Despite the court's ruling, Pogue elicited testimony from Stephanie and V.P.'s brother that V.P. had a reputation for untruthfulness, and she had admitted her "kids" could be fathered by "ten different" sexual partners. *See supra* ¶ 15. V.P. also conceded that testing excluded Pogue as the father of a child conceived during the time of the offenses. Thus, any error in the court's ruling was harmless. An error is harmless if the State proves beyond a reasonable doubt the error in precluding evidence did not impact the jury's verdict. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). To the extent Pogue sought to undermine V.P.'s credibility, that purpose was accomplished. We find no reversible error.

## C.     Violation of Rule Excluding Witnesses from Trial

¶18 Pogue argues the superior court erred by allowing a rebuttal witness to testify in violation of Rule 9.3(a)(1), (3), which states in part that on a party's request, a court must "exclude prospective witnesses from the courtroom during opening statements and other witnesses' testimony" and direct them "not to communicate with each other about the case until all of them have testified." This rule extends to witnesses that may be recalled in rebuttal. Rule 9.3(a)(4).

¶19 When trial began, at the State's request the court explained that "[t]he rule excluding witnesses has been invoked." V.P.'s grandmother, Vicki, testified on the first day of trial, providing details of the family dynamic, V.P.'s disclosure, and the investigation involving her daughter, Stephanie. The day after Vicki testified, the court released her from subpoena upon the State's request. The rest of that day and the following day, the State presented testimony from V.P., detectives, and an expert in child sexual abuse. Pogue called defense witnesses, Stephanie and V.P.'s brother, who disputed V.P.'s version of events. On the fourth day of trial, the State called Vicki to testify in rebuttal to claims made by defense witnesses. Pogue objected, arguing Vicki's testimony violated Rule 9.3(a) because she attended portions of trial after her release from subpoena. Acknowledging that Vicki remained present for some of the State's witnesses, the court accepted the State's avowal that Vicki did not hear testimony from defense witnesses and allowed her to testify only to rebut their claims. Vicki's testimony complied with this ruling, and she admitted in the jury's presence that she was present for some of the trial.

¶20    In his motion for new trial, Pogue argued Vicki heard V.P.'s testimony in violation of Rule 9.3(a), and at a post-trial hearing he asserted she may have changed her testimony.  At the hearing, Vicki testified she was present when one of the detectives testified and for some portions of V.P.'s testimony.  Vicki avowed she did not speak with any witnesses about their testimony and did not modify her testimony in any way based on testimony she heard.  In denying the motion for new trial, the trial judge stated he did "not find that [Vicki] bolstered or . . . manipulated her testimony."  The judge then explained the rebuttal testimony did not violate the purpose of the rule and allowing it did not prejudice Pogue.  The judge added that he "did not observe anything that would have caused me concern that she was intentionally changing testimony based upon what she may have heard."

¶21    The purpose of Rule 9.3 is "to prevent witnesses from 'tailoring' their testimony to that of earlier witnesses and to aid in detecting testimony that is less than candid."  *Spring v. Bradford*, 243 Ariz. 167, 170, ¶ 14 (2017) (explaining the purpose of Arizona Rule of Evidence 615—Excluding Witnesses) (quotations and citations omitted).  When a party violates Rule 9.3, it is within the court's discretion to admit the witness's testimony.  *Id.* at 583–84, ¶¶ 18–20; *State v. Gulbrandson*, 184 Ariz. 46, 63 (1995).  We will reverse only if "the defendant shows that the trial court abused its discretion and that the defendant suffered prejudice."  *State v. Jones*, 185 Ariz. 471, 483 (1996).

¶22    Our review of the record reveals no abuse of discretion by the court and no resulting prejudice to Pogue.  Although Vicki's presence in the courtroom upon her release from subpoena violated Rule 9.3(a), there is no indication she testified falsely or altered her rebuttal testimony to conform to the State's theory of the case.  It appears undisputed that Vicki was not present for Pogue's case-in-chief, and the court properly limited her to rebutting defense witness testimony.  The court acted within its discretion in accepting as reliable Vicki's avowals that she did not modify her testimony and did not share information with other witnesses.  *See State v. Presley*, 110 Ariz. 46, 48 (1973) (finding the trial court did not err in excusing a violation of the witness exclusion rule based in part on attorney's avowal that he did not attempt to coach the witnesses); *see also Wainwright v. Witt*, 469 U.S. 412, 428 (1985) (noting that "determinations of demeanor and credibility . . . are peculiarly within a trial judge's province . . . [and] entitled deference on direct review").  Finally, Pogue's cross-examination of Vicki as to the Rule 9.3(a) violation mitigated the threat of resulting prejudice.  *See Spring*, 243 Ariz. at 173–74, ¶¶ 28–29.

**CONCLUSION**

¶23    We affirm Pogue's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA